Crammer, Appellant, *v.* Commonwealth.

Argued October 2, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Eugene F. Zenobi,* with him *Louis M. Shucker,* for appellant.

*Marx S. Leopold,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for Department of Welfare, appellee.

OPINION BY MR. JUSTICE ROBERTS, November 17, 1972:

Appellant, Mrs. Edna F. Crammer, challenges the action of the Secretary of the Department of Public

Welfare in excluding her from the "categorically needy" program of medical assistance under Title XIX of the Social Security Act.[1] We conclude that appellant has erroneously been denied benefits. We reverse.

I

Mrs. Crammer is sixty-two years of age and has been determined to be, by the Social Security Administration, totally and permanently disabled. Prior to March of 1970, appellant was receiving a $95.00 per month Department of Public Welfare (hereinafter the Department) public assistance payment.[2] In addition to this $95.00 per month cash payment, Mrs. Crammer was classed as "categorically needy" under the Pennsylvania Medicaid program,[3] thus entitling her to receive, among other medical services, free prescribed medications. As determined by the Department, appellant has necessary and recurring drug expenses of approximately $60.00 per month.

In March of 1970, appellant's cash assistance benefits (derived exclusively from Old Age Survivors Disability Insurance) were increased to the present $115.00 per month. Under Department regulations appellant

---

[1] In view of our disposition, we need not pass upon appellant's two additional contentions: (1) Whether the refusal of the Department of Public Welfare to include appellant in the "categorically needy" program violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment and; (2) Whether the Department of Public Welfare wrongfully denied appellant's eligibility to receive "non-money" payment medical assistance to meet her drug needs.

[2] This amount was determined to be, by the Department of Public Welfare, Mrs. Crammer's "minimum maintenance amount", i.e., the amount necessary to meet her "common needs" of food, shelter, clothing and incidentals. See Department of Public Welfare—Office of Family Services—Public Assistance Manual §3210.

[3] Act of June 13, 1967, P. L. 31, art. IV, §§441.1 et seq., as amended, 62 P.S. §§441.1 et seq. (Supp. 1972).

was required to accept[4] this additional $20.00 per month.[5] Because of this increase appellant was removed from the "categorically needy" Medicaid program. The Department thereafter transferred appellant to the "medically needy" program,[6] which, under applicable Pennsylvania statutes,[7] does not, and did not, afford appellant free prescription medicines.[8]  As a result of

---

[4] See Department of Public Welfare—Office of Family Services—Public Assistance Manual §§3230 and 3232.

[5] After departmental deductions, the total amount determined to be received by appellant under the increased Social Security payment was $111.00 per month. Accordingly, appellant's increase, as computed by the Department of Public Welfare, was only $16.00 per month.

[6] Since appellant's standard of need has been determined by the Department of Public Welfare to be $95.00 per month, receipt of any income exceeding that amount now results, under existing departmental policy, in discontinuance of "categorically needy" Medicaid benefits. Under the Pennsylvania Medicaid plan, a person is "categorically needy" and eligible for complete medical benefits if he receives *or* is *eligible* to receive cash assistance grants under Article IV of Title 62 (Public Assistance). Act of June 13, 1967, P. L. 31, art. IV, §441.1, as amended, 62 P.S. §441.1 (Supp. 1972).

[7] "A person shall be considered medically needy if he: (1) Resides in Pennsylvania, regardless of the duration of his residence or his absence therefrom; and

"(2) Meets the standards of financial eligibility established by the department with the approval of the Governor. In establishing these standards the department shall take into account (i) the funds certified by the Budget Secretary as available for medical assistance for the medically needy; (ii) pertinent Federal legislation and regulations; and (iii) the cost of living." Act of June 13, 1967, P. L. 31, art. IV, §442.1, as amended, 62 P.S. §442.1 (Supp. 1972).

[8] "*Except for the medically needy*, persons eligible for medical assistance may, pursuant to regulations of the department, also receive dental services, vision care provided by a physician skilled in diseases of the eye or by an optometrist, *prescribed medications*, prosthetics and appliances, ambulance transportation, skilled nursing home care for an unlimited period of time, and other remedial, palliative or therapeutic services prescribed by or provided under

the Department's determination, Mrs. Crammer's medicinal needs must now be met by expending $60.00 per month from her Social Security allotment. The end economic result of this reclassification is that appellant now is left with only $55.00 per month to meet her "common needs" of food, shelter, clothing and incidentals. Before her Social Security increase, appellant was allowed $40.00 more per month to meet these identical "common needs".

After exhausting all administrative remedies,[9] appellant appealed to the Commonwealth Court which, after an initial argument before a three-judge panel, ordered reargument before the court en banc. On November 19, 1971, the Commonwealth Court affirmed,[10] by an equally divided court, the Department's action denying appellant "categorically needy" benefits. We granted allocatur.

## II

Our determination of appellant's claim is primarily controlled by Title XIX of the Federal Social Security Act and the Pennsylvania Statutes which implement it.

Title XIX of the Social Security Act, 42 U.S.C. §1396 ff, creates a comprehensive scheme for providing medical assistance to the needy. Under this program, if the state elects to participate, the costs are shared

---

the direction of a physician." Act of June 13, 1967, P. L. 31, art. IV, §443.4, as amended, 62 P.S. §443.4 (Supp. 1972) (emphasis added).

[9] A hearing was held, at the request of appellant, before a state welfare hearing examiner on April 28, 1970, wherein the discontinuance by the Department was affirmed. A rehearing was held on June 15, 1970, the result being that appellant's "categorically needy" benefits were reinstated. On December 17, 1970, the Secretary of the Department of Public Welfare notified appellant that her "categorically needy" classification was again being revoked.

[10] *Crammer v. Department of Public Welfare*, 3 Pa. Commonwealth Ct. 460 (1971).

by the federal government. The state further has the option of deciding to what extent it will participate and the extent of coverage to be offered. The Commonwealth has decided to provide coverage for both the "categorically needy" and the "medically needy".[11]

Under the "categorically needy" program, full medical benefits[12] are afforded those actually receiving or *eligible* to receive cash assistance grants under one of the Commonwealth's federally funded public assistance programs for the blind, aged, disabled or families with dependent children. Pennsylvania's program in this respect fully comports with the federal requirements set out in 42 U.S.C. §1396a(a)(10)(A).[13]

Additionally, the Commonwealth has chosen to participate in the optional program of providing medical assistance, although of a more limited nature, to those classed as "medically needy". 42 U.S.C. §1396a(a)(10)(B). This classification encompasses those people who are blind, aged, disabled or families with dependent children, but whose income, although allegedly

---

[11] "§441.1 Persons eligible for medical assistance

"The following persons shall be eligible for medical assistance:

"(1) Persons who receive or are eligible to receive cash assistance grants under this article;

"(2) Persons who meet the eligibility requirements of this article for cash assistance grants except for citizenship durational residence and any eligibility condition or other requirement for cash assistance which is prohibited under Title XIX of the Federal Social Security Act; and

"(3) The medically needy." Act of June 13, 1967, P. L. 31, art. IV, §441.1, as amended, 62 P.S. §441.1 (Supp. 1972) (footnote omitted).

[12] 62 P.S. §443.1 (certain institutional care); 62 P.S. §443.2 (home health care); 62 P.S. §443.3 (certain out-patient services) and; 62 P.S. §443.4 (certain additional services, including drugs, *not* available to the medically needy).

[13] "A state plan for medical assistance must:

"(10) provide for making medical assistance available to all individuals receiving aid or assistance under State plans approved

sufficient to cover daily living expenses (more than that allowable under public assistance guidelines), is insufficient to pay for required medical care.[14] Thus, this class embraces the same category of recipients as does section 1396a(a)(10)(A), with the difference being that the "medically needy" have additional available income.

Section 1396a(a)(17) of Title 42[15] imposes additional requirements upon the state plans implementing the

under subchapters I, X, XIV and XVI of this chapter, and part A of subchapter IV of this chapter; and—

"(A) provide that the medical assistance made available to individuals receiving aid or assistance under any such State plan—

"(i) shall not be less in amount, duration, or scope than the medical assistance made available to individuals receiving aid or assistance under any other such State plan, and

"(ii) shall not be less in amount, duration, or scope than the medical or remedial care and services made available to individuals not receiving aid or assistance under any such plan; and . . ." 42 U.S.C. §1396(a)(10)(A).

[14] "A state plan for medical assistance must:

"(B) if medical or remedial care and services are included for any group of individuals who are not receiving aid or assistance under any such State plan and who do not meet the income and resources requirements of the one of such State plans which is appropriate, as determined in accordance with standards prescribed by the Secretary, provide—

"(i) for making medical or remedial care and services available to all individuals who would, if needy, be eligible for aid or assistance under any such State plan and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical or remedial care and services, and

"(ii) that the medical or remedial care and services made available to all individuals not receiving aid or assistance under any such State plan shall be equal in amount, duration, and scope; . . ." 42 U.S.C. §1396a(a)(10)(B). See also note 11, supra.

[15] "A state plan for medical assistance must: (17) include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants

Medicaid program; paramount among these require-ments is that all state plans adopt "reasonable stand-ards" for determining Medicaid eligibility. Under sub-section (17), "reasonable standards" include: (1) standards which consider only *actually available in-come*,[16] 42 U.S.C. §1396a(a)(17)(B); (2) standards

---

or recipients of assistance under the plan who are not receiving aid or assistance under the State's plan approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medi-cal assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the appli-cant or recipient and (in the case of any applicant or recipient who would, if he met the requirements as to need, be eligible for aid or assistance in the form of money payments under a State plan approved under subchapter I, X, XIV, or XVI of this chapter, or part A of subchapter IV of this chapter) as would not be dis-regarded (or set aside for future needs) in determining his eligi-bility for and amount of such aid or assistance under such plan, (C) provide for reasonable evaluation of any such income or re-sources, and (D) do not take into account the financial responsi-bility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or is blind or permanently and totally disabled; *and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other type of remedial care recognized under State law; . . . .*" 42 U.S.C. §1396a(a)(17) (empha-sis added).

[16] 45 C.F.R. §248.21(a)(2), which interprets portions of 42 U.S.C. §1396a(a)(17), makes it abundantly clear that the re-quirements of the section apply with equal force to both the "cate-gorically needy" and "medical needy" programs:

"A State plan under title XIX of the Social Security Act must:
. . .
"(2) With respect to *both* the categorically needy and, if they are included in the plan, the medically needy:

which provide for the reasonable evaluation of resources, 42 U.S.C. §1396a(a)(17)(C) and; (3) standards which are flexible insofar as they take into account, "except to the extent prescribed by the Secretary, the *costs* (whether in the form of insurance premiums or otherwise) *incurred for medical care or for any other type of remedial care recognized under State law.*" 42 U.S.C. §1396a(a)(17)(D) (emphasis added).

In view of the requirements of subsection (17), we conclude that appellant is eligible for inclusion in the Medicaid "categorically needy" program because her medical expenses are so large that her *available* income, as computed in accordance with the flexible income (spend-down) provision of subsection (17)(D), places her within the ambit of the Pennsylvania statute which implements the federal directives of 42 U.S.C. §1396a(a)(10)(A).[17]

"The following persons shall be eligible for medical assistance: (1) Persons who receive *or are eligible to receive* cash assistance grants under this article." Act of June 13, 1967, P. L. 31, art. IV, §441.1, as amended, 62 P.S. §441.1 (Supp. 1972) (emphasis added).

*For Medicaid purposes only,* not only are those people who actually receive welfare cash payments entitled to benefits as "categorically needy",[18] but also those who, under the spend-down provision of subsection

---

"(i) *Provide that only such income and resources as are actually available will be considered and that income and resources will be reasonably evaluated.*" (Emphasis added.)

[17] See note 13, supra.

[18] It should be noted that 45 C.F.R. §248.10(a)(1), which defines "categorically needy" for Medicaid purposes compels and is in accord with the Commonwealth's definition of the term: "(1) The term 'categorically needy' refers to an individual who is receiving financial assistance under the State's approved plan under title I, IV-A, X, XIV, or XVI of the Social Security Act, *or is in need under the State's standards for financial eligibility in such plan.*" (Emphasis added.)

(17) (D), establish *eligibility* for cash payments, thereby meeting the income requirements of the Pennsylvania "categorically needy" program.[19]

Hence appellant must be afforded "categorically needy" benefits since her available income, when computed in accordance with the spend-down provision of subsection (17) (D), places her below the amount determined by the Department to be her minimum standard of need. Appellant's $115.00 per month, derived exclusively from Social Security, less $60.00 per month for drug expenses, leaves appellant only $55.00 per month to meet her minimum maintenance needs, which the Department concedes to be $95.00 per month.

### III

The federal legislative history of the Medicaid Act clearly supports the conclusion that appellant is en-

---

[19] Judge CRUMLISH of the Commonwealth Court, writing for himself and Judge KRAMER in support of reversing the decision of the Secretary of the Department of Public Welfare, also concluded that, for *Medicaid purposes only*, eligibility for cash assistance payments under the "categorically needy" program can only be determined by applying the spend-down provision of subsection (17) (D).

As further pointed out by Judge CRUMLISH, 42 U.S.C. §1396a (a)(10)(B), when read in conjunction with the spend-down provision of subsection (17)(D), compels the conclusion that appellant must be classed as "categorically needy", since inclusion in the "medically needy" program would be impermissible.

"That section [42 U.S.C. §1396a(a)(10)(B)] provides 'medically needy' assistance at the State's option for individuals 'who are not receiving aid or assistance under any such state plan [welfare recipients] and who do not meet the income and resources requirement of the one of such State plans which is appropriate. . . .' When read in conjunction with §1396a(a)(17), subsection (10) includes as 'categorically needy' for Medicaid purposes, those persons actually receiving welfare benefits and those persons, who under the flexible income test of subsection (17), meet the income and resources requirements of the 'categorically needy' plan." 3 Pa. Commonwealth Ct. 460, 467 (1971).

titled to receive "categorically needy" benefits. The Finance Committee, in its report on the bill to the Senate, stated:

"The committee bill would make more specific a provision now in the law that in determining eligibility for and the extent of aid under the plan, States must use reasonable standards consistent with the objectives of the titles.

. . .

"The bill also contains a provision designed to correct one of the weaknesses identified in the medical assistance for the aged program. Under the current provisions of Federal law, some States have enacted programs which contain a cut-off point on income which determines the financial eligibility of the individual. Thus, an individual with an income just under the specified limit may qualify for all of the aid provided under the State plan. Individuals, however, whose income exceeds the limitation adopted by the State are found ineligible for the medical assistance provided under the State plan even though the excess of the individual's income may be small when compared with the cost of the medical care needed. In order that all States shall be flexible in the consideration of an individual's income, the committee bill requires that the State's standards for determining eligibility for and extent of medical assistance shall take into account, except to the extent prescribed by the Secretary, the cost—whether in the form of insurance premiums or otherwise—incurred for medical care or any other type of remedial care recognized under State law. *Thus, before an individual is found ineligible for all or part of the cost of his medical needs, the State must be sure that the income of the individual has been measured in terms of both the State's allowance for basic maintenance needs and the cost of the medical care he requires.*
* * *

"The State may require the use of all the excess income of the individual toward his medical expenses, or some proportion of that amount. *In no event, however, with respect to either this provision or that described below with reference to the use of deductibles for certain items of medical service, may a State require the use of income or resources which would bring the individual's income below the amount established as the test of eligibility under the State plan. Such action would reduce the individual below the level determined by the State as necessary for his maintenance.*" U. S. Code Cong. and Adm. News, 89 Cong., 1st Sess., 1965, pp. 2018-19 (emphasis added).[20]

Senator Ribicoff, whose comments appear in the Congressional Record, most succinctly articulated the Congressional intent when he stated:

"Finally, the bill would require States to apply means tests on a flexible basis, so as to take into account not only the individual's income, but also the cost and extent of the medical care he requires.

---

[20] Senator McNamara, the sponsor of the Senate bill, speaking on the floor of the Senate, brought the intent of subsection (17) into even sharper focus: "We had criticized the in-or-out income tests employed by some States in determining eligibility. For example—if a State had a test of $1,500 in income, a person with $1,501 would be ineligible despite the fact that he might have had thousands of dollars of expenses—while an individual with $1,499 in income and only $100 or $200 in expenses would be eligible. The new legislation corrects this situation by requiring the States to relate their income tests to the expenses incurred by the applicant. Cong. Rec., 89th Cong., 1st Sess., July 8, 1965, p. 15876.

The analysis of subsection (17) found in the Senate Finance Committee report was also introduced into the Congressional Record, by Senator Long: "Eligibility: improvements would be effectuated in the program for the needy elderly by requiring that the States must provide a flexible income test which takes into account medical expenses and does not provide rigid income standards which arbitrarily deny assistance to people with large medical bills." Cong. Rec., 89th Cong., 1st Sess., July 6, 1965, p. 15604.

"I think there is no question that these changes which H.R. 6675 will make in the way that means tests are applied by the States are sound. They strike a sensible balance.

"It is reasonable to allow States to make determinations of need and eligibility for public assistance programs; *but it is unreasonable to allow the standards of eligibility to be applied in such a way that they prevent assistance from reaching those who may need it most.*" Cong. Rec., 89th Cong., 1st Sess., July 7, 1965, p. 15804 (emphasis added).

A more lucid pronouncement of legislative intent can hardly be conceived. Yet the Secretary of the Department of Public Welfare, in denying appellant "categorically needy" benefits, has done that which is explicitly forbidden by the federal statute; the Secretary has required appellant to utilize so much of her Social Security income for medical purposes, that her actual available income has been reduced "below the level determined by the State as necessary for [her] maintenance."

## IV

The Department relies almost exclusively on the case of *Fullington v. Shea*,[21] 320 F. Supp. 500 (D. Colo. 1970), aff'd, 404 U.S. 963, 92 S. Ct. 345 (1971) (per curiam),[22] to support the proposition that the flexible income provision of 42 U.S.C. §1396a(a)(17)(D) does not apply in determining eligibility under the "categorically needy" program set out in 42 U.S.C. §1396a (a)(10)(A). It argues that *Fullington* precludes any

---

[21] The three judges of the Commonwealth Court who were of the opinion that the decision of the Secretary of the Department of Public Welfare to deny appellant "categorically needy" benefits should be affirmed also relied heavily on *Fullington*.

[22] *Fullington* was decided by a three-judge district court pursuant to 28 U.S.C. §§2281 and 2284.

interpretation of subsection (17) other than that the flexible income provision can only be applicable to those who fall within the ambit of the "medically needy" program of 42 U.S.C. §1396a(a)(10)(B). We find such an assertion to be untenable.

A careful reading of *Fullington* reveals that only two issues were raised and decided, neither of which is applicable to, or even suggested by, the instant appeal: "There are two fundamental questions presented for consideration: (1) *Whether Colorado has failed to follow out the federal statutory scheme—this reduces to whether the federal laws relative to the 'medically indigent' are mandatory or optional;* (2) whether the failure of Colorado to extend Medicaid to the 'medically indigent' while at the same time extending it to the 'categorical' recipients constitutes an invalid discrimination violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States." *Fullington,* supra at 503 (emphasis added).

In addition to denying the appellant's constitutional claim, the court in *Fullington* also disposed of the statutory question by holding: "We cannot, of course, ignore the clear thrust of Section (10). Hence, based on the analysis and the evidence [of Congressional and Department intent] *we are constrained to hold that Congress has not required Colorado or any other state to include the medically indigent in a Medicaid program, and that the state's adoption or failure to adopt such a program was optional."* Id. at 505 (emphasis added).

Obviously, since Pennsylvania, unlike Colorado, has decided to exercise its option to participate in both the "categorically needy" and "medically needy" programs, the holding in *Fullington* is irrelevant, as well as inapplicable, to the instant case.

Further, as the *Fullington* court noted: "Colorado has elected to cover *only* those who *receive* aid under

one of its public assistance programs. Colo. Rev. Stat. §§119-12-3(10) and 119-12-4." Id. at 503 (emphasis added). Thus, the Colorado "categorically needy" statute extends coverage to *only* those who *actually receive* public assistance payments under that state's programs. As already pointed out,[23] our statute (62 P.S. §441.1 (1) (Supp. 1972)) is more comprehensive, providing "categorically needy" services to not only those actually receiving cash payments, *but also to those eligible to receive such funds.* Therefore, *Fullington,* based on a more restrictive Colorado statute, is inapposite, since under the Pennsylvania statute, appellant, Mrs. Crammer, is *"eligible* to receive cash assistance grants", for Medicaid purposes, thus entitling her to "categorically needy" Medicaid benefits.[24]

## V

It must be concluded that the determination of the Secretary of the Department of Public Welfare denying appellant benefits under the Pennsylvania "categorically needy" Medicaid program is contrary to the controlling federal and Pennsylvania statutes. Accordingly, the order of the Commonwealth Court is reversed, and the Secretary of the Department of Public Welfare is directed to afford appellant appropriate relief consistent with this opinion.[25]

---

[23] See note 11, supra.

[24] See note 19, supra.

[25] We are mindful of the recently (October 30, 1972) enacted amendments, contained in H.R. 1, to the Federal Social Security Act. However, our disposition in the instant case is in no way effected by these changes. It should be noted that most of the modifications in the Medicaid law are not to become effective until July 1, 1973. The changes in the "security income" provisions for the aged, blind and disabled are not to become operative until July 1, 1974.