Stephanie Caddy, Appellant, *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Appellee.

Argued February 7, 1974, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Edward R. Schellhammer,* for appellant.

*Darius G. C. Moss,* Assistant Attorney General, with him *Marx S. Leopold,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, July 10, 1974:

This is an appeal from an adjudication and order of the Department of Public Welfare (DPW) which sustained the action of the Cambria County Board of Assistance (CBA) in terminating the medical assistance of Stephanie Caddy (appellant). Our scope of review is limited to determining whether or not the adjudication was in accordance with law and supported by substantial evidence. *Krug v. Department of Public Welfare,* 9 Pa. Commonwealth Ct. 563, 308 A. 2d 168 (1973).

Questioned by this appeal, in the light of Federal statutes and regulations, is the method used by the CBA to determine the appellant's income and the propriety of the DPW regulation concerning the computation of income upon which the determination was based.

The adjudication reveals that the *original* CBA termination was based upon the following facts. The appellant and her teenage daughter receive Social Se-

curity benefits in the amount of $209.40 per month, and the appellant also receives $40.00 a month for room and board from each of three others of her children living in her home. Based on DPW Regulation 9223.-132,[1] Five Dollars of each $40.00 rent and board payment is considered profit, and the three payments thus increase the appellant's income by $15.00 per month, bringing it to a total income of $2,692.80 per year. The medical assistance exemption for a family of two is $2,500.00, and this amount plus annual medical expenses for the appellant and her daughter ($33.00) totals an exemption of $2,533.00. *See* DPW Regulation 9223.31. The appellee explains that one-half of the difference between the annual gross income and the total exemption equals $79.90, which is deemed to be the annual income available to meet medical costs, and that, therefore, medical assistance is unnecessary under DPW Regulation 9223.331.

Appellant complains that this computation is improper because it includes the $15.00 "profit" figure from room and board charges which, she contends, is based on an arbitrary regulation inconsistent with Federal directives.

Although participation by the States in a Federal program to provide medical assistance for the "medically needy" is optional, if the State is to remain eligible for Federal funding it must comply with Federal statutes and regulations. *See Crammer v. Commonwealth,* 449 Pa. 528, 296 A. 2d 815 (1972). In Pennsylvania the Legislature has decided to provide medical coverage for the "categorically needy," and, on a more limited basis, for "medically needy." Act

---

[1] "Profit is determined as follows:

*From Room and Board Payments* . . . deduct the sum of (a) and (b) from the total of such payments the client receives:

  a. Deductions for minimal costs . . .

    3. $30 per month for each separate tenant-boarder. . . .

  b. 50% of the remainder."

of June 13, 1967, P. L. 31, *as amended,* 62 P.S. §441.1. It must, therefore, comply with Title XIX of the Social Security Act, specifically Section 1396a(a)(17), 42 U.S.C. 1396a(a)(17), which requires that a State plan for medical assistance must: "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) *provide for taking into account only such income and resources as are . . . available to the applicant or recipient and* . . . (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 . . .; and provide for flexibility in the application of such standards with respect to income by taking into account . . . the costs . . . incurred for medical care or for any other type of remedial care recognized under State law. . . ." (Emphasis added.) In addition, the Code of Federal Regulations clearly explains that the State plan for medical assistance must "[p]rovide that only such income and resources as are *actually available* will be considered and that income and resources will be reasonably evaluated." (Emphasis added.) 45 CFR §248.21(a)2(i).

Buttressed by the requirement that State plans provide "reasonable standards" to evaluate only the "actually available" income, the appellant sought to invalidate the DPW figures and offered into evidence the dollar amount of utility bills (not the bills themselves) for the preceding six months, which amounted to an average of $101.22 per month or prorated at $20.22 per person. This total was referred to as part of the "average monthly actual shelter expenses."

While the appellant seemed to be headed in the right direction in this offer, she failed to complete her record by properly proving the actual expenses for shelter, utilities and food, that is, for room and board costs. Nonetheless, the appellant makes another argument which further questions the accuracy of the "profit" figure in DPW Regulation 9223.132, namely: that Federal regulations require, in regard to the medically needy, that the State plan must:

"(i) Provide levels of income and resources for maintenance, in total dollar amounts, as a basis for establishing financial eligibility for medical assistance.

"Under this requirement:

"(a) such income levels must be comparable as among individuals and families of varying sizes;

"(b) The income levels for maintenance must be, *as a minimum, at the levels of the most liberal money payment standard used by the State* . . . as a measure of financial eligibility in any categorical money payment program in the State. . . ." (Emphasis added.) 45 CFR §248.21(a)3.

The appellant contends that the DPW minimum maintenance allowance (in DPW Regulation 3260) for cash recipients in a household of five in Cambria County provides for a food cash allowance of $29.00 per month per person, $57.00 for shelter and $17.00 for uilities, prorated at $14.80 per person, which amounts to a room and board allowance of $43.80. We realize that this is not a categorically needy unit but we are shown by these figures that the minimum need requirements of $43.80, undisputed in substance by the appellee, exceed the $40.00 received by the appellant and, more importantly, exceed the arbitrary $35.00 figure allotted by DPW to cover the expenses.

We are convinced that a general formula probably cannot be used to determine specific expenses and prof-

it from room and board, and, we believe, therefore, that we must remand this matter for the development of evidence as to average actual expenditures, and for a finding as to actual available income.[2] The general formula of DPW Regulation 9223.132 would impute income to the appellant which may not actually be available to her and, if it does so, the Regulation would be inconsistent with the Federal regulations, and should not be applied.

As stated earlier, the computation discussed above was used by CBA in its original determination, but, prior to the DPW hearing, the appellant was informed that there was also another computation made which would necessitate the termination of her medical assistance. This second determination, which the referee sustained, considered the applicant unit to be a family of three. The income of the appellant's 20-year-old son Thomas ($3,354.00), was included in the annual income of the appellant, amounting now to $5,986.80.[3]

---

[2] Compare DPW Regulation 9223.132 (footnote 1, *supra*) with the DPW Regulation 3234.32, below, which, in regard to general assistance, does to some extent consider actual expenditures.

*"From Room and Board Payments, paid singly or in combination, and for Rent from Apartments* deduct the sum of (a) and (b) from the total of such payments the client receives:

"a. Deductions for minimum costs . . .

3. $30.00 per month for each separate tenant-boarder. . . .

"b. The larger of the following amounts is deducted to recognize costs above the minimum.

1. 50% of the remainder after the deductions in a. above, or
2. The excess of the assistance unit's actual shelter cost over the shelter allowance."

[3] This computation also included the DPW Regulation 9223.-132 "profit" figure for room and board.

$3,354.00 Thomas' income
2,512.80 Social Security benefits
120.00 "profit" from room and board

---

$5,986.80

The total exemption for the three was $3,283.00, leaving $1,351.90 annual income available for medical expenses. (Based on DPW Regulation 9223.331, i.e. one-half of the difference of income and exemptions.)

The appellant objects to the DPW Regulation 9223.132 computation, the imputed but non-accrued profit figure which we have discussed, but also suggests that Thomas, aged 20 at the time of the adjudication, was emancipated and that his income should not have been included in the computation. Emancipation of a minor is a question of fact which is not to be presumed and is not solely dependent on the employment status of the minor or his place of residence. *Detwiler v. Detwiler,* 162 Pa. Superior Ct. 383, 57 A. 2d 426 (1948). Here the adjudication merely labelled Thomas as unemancipated and as part of the family unit, but it did not provide satisfactory evidence to determine Thomas' status. We need not, however, decide this issue or the appellant's constitutional arguments in regard thereto, because Thomas became 21 years of age on March 20, 1974, and, as explained at oral argument, DPW considers a 21-year-old individual, without proof to the contrary, to be emancipated. And, although an emancipated child may be a part of a family unit, DPW Regulations 9223 and 9310.21 consider a family unit and an applicant group of adults or emancipated minor children to be those persons "living together and applying for MA" who consider themselves to be dependent on the head of the household. Here Thomas did not apply for medical assistance with the appellant, and it was not shown that he considered himself dependent on her. He should not, therefore, be in-

---

For some unexplained reason the adjudication finding No. 3 lists the annual income figure as $5,580.80, but when it computes one-half the difference of the total exemption of $3,283.00 and income, it arrives at the $1,351.90, figure which we get using the $5,986.80 figure. The DPW brief also uses this $5,986.80 figure.

cluded as part of her "family unit" in the evaluation of resources. Furthermore, the income of an individual living in the applicant's home may not be included in her resources unless free contributions from the individual concerned are actually received. *King v. Smith,* 392 U.S. 309 (1968).

Having considered Thomas' income in the appellant's income and having computed her income on the basis of an arbitrary "profit" figure which is inconsistent with the Federal guidelines, we cannot sustain the adjudication and order of the DPW.

For the above stated reasons we, therefore,

### ORDER

Now, July 10, 1974, the Order of the Department of Public Welfare denying appellant medical assistance is reversed, and the record in this case is hereby remanded to the Department of Public Welfare for proceedings consistent with this opinion.