Evelyn **BROWN**

v.

Frank **BEAL, Individually and in his capacity as Secretary, Pennsylvania Department of Public Welfare.**

Civ. A. No. 74–2671.

United States District Court,
E. D. Pennsylvania.

Nov. 17, 1975.

Eugene F. Zenobi, Reading, Pa., for plaintiff.

Marx S. Leopold, Pa. Dept. Welfare, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In this action, plaintiff attacks certain determinations made by the Pennsylvania Department of Public Welfare in its interpretation of federal regulations promulgated under the Medicaid program. Invoking jurisdiction under 28 U.S.C. §§ 1343(3) and (4), 2201, 2202, 2281 and 2284, plaintiff seeks declaratory and injunctive relief to remedy an alleged deprivation of her civil rights under 42 U.S.C. § 1983 and § 1988. In addition, she asserts a pendent claim

under the Supremacy Clause. After a hearing on plaintiff's motion for a preliminary injunction and defendant's motion to dismiss the complaint, the parties entered into a stipulation in which defendant agreed to extend to plaintiff "white card" benefits pending resolution of the various outstanding motions. Presently before the Court are cross motions for summary judgment.[1]

*The Claim*

Plaintiff presently receives $195.40 monthly in Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (SSA benefits). Prior to July, 1974, she received $162.00 per month. Because of the increased level of her Title II (SSA) benefits, she was notified by the Berks County Board of Assistance that she would be required to "spend down" to the General Assistance level of need currently set at $147 before she would qualify for Medicaid "white card"[2] benefits which she had previously enjoyed from June, 1970. Plaintiff suffers from an arthritic and poliomyelitic condition complicated by a minor heart defect and a chronic loss of equilibrium presumably related to her arthritic circulatory disease. She has difficulty walking and must wear neck and leg braces. In order to alleviate the pain associated with these medical problems, she must spend more than $60.00 each month on prescription drugs.[3] Prior to the notification by the Berks County Board of Assistance, plaintiff was able to obtain these drugs without expense by using the "white card" she had been issued as a "categorically needy individual" under the pertinent federal and Pennsylvania laws.

She commenced this action alleging that Pennsylvania's statutory scheme for payment of "categorically needy" benefits under Medicaid denied her rights to due process and equal protection under the laws guaranteed by the Fourteenth Amendment.[4] As Pennsylvania interprets the Social Security Act, according to plaintiff, individuals who are deemed "disabled" under Title XVI, Supplemental Security Income for Aged, Blind and Disabled, 42 U.S.C. § 1381 *et seq.* (SSI benefits), are not only granted monthly state supplements of $20 over and above the "statutory nationwide benefit level", 42 U.S.C. § 1382(f), but are, in addition, automatically granted "categorical assistance" in the form of "white card" benefits. Plaintiff alleges that defendant's practice violates the mandate of the federal law, Title XIX, Grants to States for Medical Assistance Programs, 42 U.S.C. § 1396 *et seq.*

*Jurisdiction*

In this case we are faced with a statutory and constitutional challenge to the defendant's eligibility standards for granting "white card" benefits. Following the procedure mandated in *Hagans v. Levine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), we must first determine whether the constitutional questions have sufficient substance to support federal jurisdiction pursuant to 28 U.S.C. § 1343. Without jurisdiction under § 1343, we are powerless to consider the plaintiff's pendent statutory claim based on the Supremacy Clause of the Constitution. Once we conclude preliminarily that a substantial federal question is raised, however, our duty is to adjudicate the potentially dispositive pendent "statutory" claim before

1. There are several other motions which are discussed *infra*.

2. White card benefits refer to Medicaid granted to "categorically needy" individuals and, in Pennsylvania, includes the cost of prescription drugs. 62 P.S. § 443.4.

3. For the month of September, plaintiff's prescription drug expenses totaled $71.70.

4. Defendant's position at the hearing was that plaintiff failed to exhaust her administrative remedies by not taking an appeal with the Department of Public Welfare. Such an appeal, however, would have been futile. See Exhibit D to her complaint.

dealing with the merits of the constitutional question which requires consideration by a three-judge court. If we find the statutory question to be dispositive, then the three-judge court need not be convened.

We have concluded, as a preliminary matter, that plaintiff has clearly alleged a deprivation, under color of state law, of her right to equal protection under the Fourteenth Amendment which for the purposes of jurisdiction, meets the substantiality requirement under *Hagans, supra,* 415 U.S. 537–538, 94 S.Ct. 1372; *Doe v. Beal,* 523 F.2d 611 (3d Cir. 1975).

Under Pennsylvania's Medicaid Program, categorical assistance ("white card" benefit) is automatically granted to persons who are "disabled" under the appropriate criteria incorporated into the SSI program, 42 U.S.C. § 1382c(a)(3). These disabled persons receive a federally mandated cash grant of $146, 42 U.S.C. § 1382f, plus a $20 state supplement, a total of $166.[5] On the other hand, plaintiff is not eligible for the "white card" Medicaid benefit until she has "spent down" to the state's General Assistance level currently set at $147 even though she is "disabled" under the same criteria governing the SSI program (compare § 416(i) and § 423(d) of the SSA program to § 1382c(a)(3) in the SSI program). Thus, while "disabled persons" under the SSI program receive a total cash grant of $166 plus the Medicaid white card entitling them to prescriptions without cost, plaintiff must spend approximately $49 for prescriptions before she qualifies for the same Medicaid benefit. Moreover, SSI benefits are granted to "disabled" persons who did not accumulate the working history necessary for SSA benefits. In essence, plaintiff has been penalized for working.

■ This disparate treatment of similarly situated "disabled" persons under

Pennsylvania's Medicaid Program raises a substantial constitutional question of equal protection under the Fourteenth Amendment—whether this classification of disabled individuals rationally furthers a legitimate state interest. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *U. S. Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). We hold that this constitutional question is sufficiently substantial to confer jurisdiction under 28 U.S.C. § 1343. Accordingly, we have the power to reach the merits of the pendent statutory claim.

*The Medicaid Program and Pennsylvania participation*

In order to assess the merits of plaintiff's statutory claim, we turn to the applicable federal legislation from which her argument springs. In Title XIX of the Social Security Act, Medicaid, 42 U.S.C. § 1396 *et seq.,* Congress created a federal-state cooperative program designed to deliver aid in the form of medical assistance to " * * * aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services. * * * "

Under this program Congress mandates payment of federal funds for Medicaid to states which have submitted plans for medical assistance which meet the statutory criteria set forth in 42 U.S.C. § 1396a. Under the federal legislative scheme, however, states are given leeway in devising plans with respect to the extent of medical assistance granted, see e. g., 42 U.S.C. § 1396d(a), and with respect to the qualifications for eligibility, see e. g., 42 U.S.C. § 1396a(a)(10). The plans, however, are subject to certain limitations. For example, 42 U.S.C. § 1396a(a)(17) requires that the state plan for medical assistance must:

" * * * include reasonable standards * * * for determining eli-

5. Under § 1382e, states have the option to provide a "state supplement". Pennsylvania has elected to pay such a supplement. 62 P.S. § 432.

gibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, [and] (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient * * * ". The various options open to the states under the federal scheme are also described in the regulations issued by the Secretary, 45 CFR § 248.

Pennsylvania's Medicaid plan includes two different categories of assistance recipients—the "categorically needy", § 1396a(a)(10)(A) and the "medically needy", § 1396a(a)(10)(C)—as set out in 62 P.S. § 441.1.[6] The cost of prescription medications is included in assistance to the "categorically needy"[7], but is not included in assistance to the "medically needy"[8]. The "categorically needy" include all those individuals in Pennsylvania who are currently receiving benefits under Title XVI, Supplemental Security Income for the Aged, Blind and Disabled, 42 U.S.C. § 1381 et seq.[9]

*Plaintiff's Statutory Argument*

Plaintiff argues that the defendant's determination thai she must spend down to the General Assistance level of need to become eligible for Medicaid as a "categorically needy" individual is contrary to the mandate of the federal statutory scheme.

She argues as follows: her monthly SSA benefits total $195.40, but the monthly cost of her prescribed medications ($71.70 for September, 1974) reduces her available income to $123.70 to pay for all of her basic necessities—food, clothing and shelter, etc. The defendant's determination that she must "spend down" to $147.00 before she is eligible for "white card" benefits in effect requires her to spend approximately $48.40 of her SSA income for prescription medications before she has reached the "level of need" at which General Assistance[10] recipients become eligible for "categorically needy" benefits. She points out that while disabled persons receiving SSI benefits plus the $20,00 monthly state supplement are automatically granted "categorically needy" benefits, giving them $166.00 to meet the costs of food, clothing, and shelter, she is left with only $147.00 per month for these same basic necessities. This disparity, she argues, is grossly unfair because the *only* difference between her "disabled" status for the purpose of qualification for Medicaid and the "disabled" status of SSI recipients is that she worked long enough to qualify for the insurance benefits under SSA, despite the fact that her medical needs are equally as compelling as those under SSI. In other words, she argues she

---

6. 62 P.S. § 441.1 Persons eligible for medical assistance
 The following persons shall be eligible for medical assistance:
 (1) Persons who receive or are eligible to receive cash assistance grants under this article;
 (2) Persons who meet the eligibility requirements of this article for cash assistance grants except for citizenship durational residence and any eligibility condition or other requirement for cash assistance which is prohibited under Title XIX of the Federal Social Security Act; and
 (3) The medically needy.

7. 62 P.S. § 443.4.

8. 62 P.S. § 442.1 The medically needy; determination of eligibility

A person shall be considered medically needy if he:
 (1) Resides in Pennsylvania, regardless of the duration of his residence or his absence therefrom; and
 (2) Meets the standards of financial eligibility established by the department with the approval of the Governor. In establishing these standards the department shall take into account (i) the funds certified by the Budget Secretary as available for medical assistance for the medically needy; (ii) pertinent Federal legislation and regulations; and (iii) the cost of living.

9. See fn. 5 and text, *supra*.

10. "General Assistance" is a cash grant program for needy individuals funded by the state government.

would qualify for SSI, the state supplement and categorically needy benefits but for the fact that she has a 30-year work history spanning a period from 1933 to 1969. Accordingly, she contends that the state's decision to make the $20.00 payment to disabled persons under the SSI program has raised the "level of need" for "disabled persons" to $166.-00 so that she should not be required to "spend down" below that level, i. e., to $147.00 as currently required, to become eligible for "white card" benefits.

To support her argument that the federal scheme has been violated, plaintiff points to the pertinent federal legislation and regulations as well as a recent Pennsylvania case, *Crammer v. Commonwealth*, 449 Pa. 528, 296 A.2d 815 (1972). Specifically, she contends that Pennsylvania's option to include SSI recipients as "categorically needy", 62 P.S. § 441.1, and the concomitant decision to grant each SSI recipient a $20.-00 state supplement, 62 P.S. § 432, has a two-fold effect. First, the state's "level of need" for "disabled" persons for purposes of Medicaid eligibility has been raised from $147.00 (the General Assistance "level of need") to $166.00. Second, for Medicaid purposes, she argues that 42 U.S.C. § 1396a(a)(17) and attendant regulations require that necessary medical expenses be deducted from plaintiff's income to determine the actual income available for necessities, and once these medical expenses are deducted, the mandate of 42 U.S.C. § 1396a(a)(10)(C)(i) and (ii) requires that she be treated as "categorically needy". Finally, plaintiff points out that the federal regulations require this result, specifically 45 CFR § 248.1(a)(1) which states:

"In order to be considered as categorically needy for purposes of Title XIX, *an individual must in general be* receiving financial assistance or *sufficiently in need to be financially eligible for financial assistance* un-

der Title IV–A or XVI of the Social Security Act, or *under a State supplement to Title XVI assistance.*" 45 CFR § 248.1(a)(1)(i). (Emphasis added)

Plaintiff argues that once the "spend down" provision of 42 U.S.C. § 1396a(a) (17) is applied to her income, she is left with income so low that it renders her " * * * eligible to receive cash assistance grants under this article", 62 P.S. § 441.1, i. e., her income is less than $166.00, the total grant to "disabled" persons under Pennsylvania law. As such, *Crammer* requires that for *Medicaid purposes only,* she has established "eligibility" for a cash payment under 62 P.S. § 432(2.1) the same "eligibility" which triggers the "categorically needy" Medicaid benefits.[11]

*Defendant's Position*

Defendant contends that no federal legislative mandate has been violated and cites 45 CFR § 248.1(b) as its justification for applying to plaintiff the General Assistance level of need at $147.-00 rather than the $166.00 figure. The state, it is argued, is *not* required under the latitude created in the federal scheme to grant categorically needy benefits to individuals until they have "spent down" to the top of the SSI mandatory benefit, $146.00, as required in Title XVI, 42 U.S.C. § 1382f. In addition, the fact that the state has chosen, at its option under § 1382e, to grant a state supplement, 62 P.S. § 432(1) to those persons receiving SSI, 62 P.S. § 432(2.1), does not create a different "level of need" for Medicaid eligibility purposes. Moreover, defendant argues, *Crammer* conclusively establishes the proposition that the state's determination of different "levels of need" to trigger eligibility for "medically needy" and "categorically needy" benefits is not open to question, provided that the minimal requirements of the federal mandate are satisfied. According to 45 CFR § 248.1(b)(2)(i),

11. Her other arguments are addressed to the constitutional questions which we do not reach in this opinion.

defendant contends, the only required coverage of the "categorically needy" is to include:

"(i) individuals receiving a benefit under Title XVI (SSI)." This, defendant argues, is precisely what Pennsylvania's Medicaid Plan does.

*Statutory Issue and Conclusions*

 The issue thus presented is whether the Social Security Act mandates that "categorically needy" Medicaid benefits be granted to a "disabled" person (who receives SSA) at the same level of available income at which disabled persons receiving SSI and the optional state supplement receive "categorically needy" benefits. In order to resolve this issue, we first consider the limitations placed on the states in assigning different eligibility requirements for granting categorically needy benefits under a Medicaid program entitled to federal funding. As previously discussed, these limitations are set forth in 42 U.S.C. § 1396a(a)(10) and a(a)(17), as well as in 45 CFR § 248.

The dispute in this case centers on § 1396a(a)(10)(C) which requires that a state plan provide:

"(C) if medical assistance is included for any group of individuals who are not described in clause (A) and who do not meet the income and resources requirements of the appropriate state plan, or the supplementary security income program under subchapter XVI of this chapter, as the case may be, as determined in accordance with standards prescribed by the Secretary—

(i) for making medical assistance available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan or to have paid with respect to them supplemental security income benefits under subchapter XVI of this chapter, and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical and remedial care and services, and

(ii) that the medical assistance made available to all individuals not described in clause (A) shall be equal in amount, duration, and scope. * * "

Under the Pennsylvania Medicaid Plan, three classes of persons are eligible to receive medical assistance, as stated in 62 P.S. § 441.1:

"(1) Persons who receive or are eligible to receive cash assistance grants under this article;

(2) Persons who meet the eligibility requirements of this article for cash assistance grants except for citizenship durational residence and any eligibility condition or other requirement for cash assistance which is prohibited under Title XIX of the Federal Social Security Act; and

(3) The medically needy."

A person is considered medically needy if he:

"(2) Meets the standards of financial eligibility established by the department with the approval of the Governor. In establishing these standards the department shall take into account (i) the funds certified by the Budget Secretary as available for medical assistance for the medically needy; (ii) pertinent Federal legislation and regulations; and (iii) the cost of living."

62 P.S. § 442.1(2).

The white card benefit (cost-free prescription medications), however, is not available to the medically needy, 62 P.S. § 443.4, while those persons eligible for state supplemental assistance under Plan No. 1 of 1974 (62 P.S. § 432 )are automatically qualified under this statutory scheme. Thus, eligibility for a cash assistance grant under § 432, an income standard, is also used as the basis for determining eligibility under the Medicaid program.

The problem is that plaintiff, who currently receives more income from her

SSA insurance benefits than entitles her to cash assistance under 62 P.S. § 432, is automatically excluded from "categorically needy" (white card) benefits regardless of her actual medical expenses until she has spent down to the General Assistance level of need currently set at $147.00. Without taking into consideration the limitations on the states expressed in the federal legislative and regulatory scheme, this result appears warranted by 62 P.S. § 441.1(1), which conditions "categorically needy" benefits on receipt of or eligibility for a cash assistance grant. This is precisely the position adopted by defendant.

However, since the Pennsylvania Medicaid plan includes two tiers of benefits, "categorically" and "medically needy" benefits, both 42 U.S.C. § 1396a(a)(10) (C), and § 1396a(a)(17) become applicable. Each section requires that only income actually available be used to determine eligibility, i. e., the cost of necessary medical expenses be deducted from income before a determination of eligibility is made. § 1396a(a)(10)(C) (i) requires that the state plan provide:

> "(i) for making medical assistance available to *all individuals who would, except for income and resources, be eligible* * * * to have paid with respect to them supplemental security income benefits under subchapter XVI of this chapter, and who have insufficient income and resources to meet the costs of necessary medical and remedial care and services. * * *"
> (emphasis added)

It is undisputed that the *benefits* available to individuals receiving SSI in Pennsylvania include a "cash assistance" grant under 62 P.S. § 432(1) totaling, in the case of a single disabled person, $20.-00 monthly. Because "receipt of" or "eligibility for" a cash assistance grant triggers "categorically needy" benefits, 62 P.S. § 441.1 and both § 1396a(a)(10) (C) and § 1396a(a)(17)(B) mandate a spend-down procedure, plaintiff becomes "eligible" for a cash assistance grant in accord with the requirements of § 432.[12] Her available income as a "disabled" person defined in 42 U.S.C. §§ 416(i), 423(d) and § 1382c(a)(3) is less than $166.00, the level at which disabled persons receive "categorically needy" Medicaid benefits. This interpretation appears to be consistent with the federal statutes. Under 42 U.S.C. § 1396a(a) (10)(C)(i),

> " * * * medical assistance [must be made] available to all individuals who would, except for income and resources, be eligible for aid * * * and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical * * * services."

*Crammer,* contrary to defendant's argument, is also consistent with this interpretation, because it requires that the spend-down provisions of 42 U.S.C. § 1396a(a)(17) be applied to determine for Medicaid purposes the income "available" to the individual. Once the spend-down provision is applied, the determination of eligibility turns on whether the individual's available income is less than the "level of need". In this case the level of need for "disabled" persons has been set by the state at $166.00. Accordingly, under the federal legislative mandate, plaintiff must be granted "categorically needy" Medicaid benefits.

The latitude allowed in the federal statutes and regulations is not quite so

---

12. In *Crammer* the court addressed the issue of "eligibility" for Medicaid when an individual's gross income exceeded the minimum level of need set for categorically needy benefits, but whose net income, after the spend-down procedure mandated in 42 U.S.C. § 1396a(a)(17) was applied, rendered her "eligible" under 62 P.S. § 441.1 for "categorically needy" benefits. Concluding that the relevant inquiry under the federal mandate was whether the individual's net available income fell below the standard of need, the Court held that the plaintiff was entitled to categorically needy benefits even though her gross income exceeded that level. *See also Caddy v. Dept. of Public Welfare,* 14 Pa. Cmwlth. 317, 322 A.2d 140 (1974).

great as defendant argues. The state plan must:

" * * * include reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter * * *." § 1396a (a)(17).

As stated in § 1396, the Medicaid program was enacted to enable the state:

" * * * to furnish (1) medical assistance on behalf of * * * aged, blind or *disabled* individuals, whose income and resources are insufficient to meet the costs of necessary medical services * * *". (emphasis added)

Furthermore, the regulations issued by the Secretary reflect the judgment that arbitrary classification, such as the one apparent in this case, must be avoided.

45 CFR § 248.2(a) provides:

"All groups the state elects to include the program are based on reasonable classifications that do not result in arbitrary or inequitable treatment of individuals or groups and are not otherwise inconsistent with the broad objectives of Title XIX of the Act."

The legislative history of the Act moreover clearly demonstrates that Congress was concerned with preventing just such inequities as this case dramatically demonstrates. Aware that under the then applicable laws persons who had some income ended up with less than those who were on public assistance because the state provided medical assistance to the latter and not to the former, Congress sought to correct this inequity with the enactment of Title XIX. Section 1396a(a)(17)(D) was specifically designed to obviate the possibility that persons with incomes above the maintenance level for public assistance who had large medical expenses would be denied medical assistance.

The Finance Committee, in its report on the bill to the Senate, stated:

"The bill also contains a provision designed to correct one of the weak-

nesses identified in the medical assistance for the aged program. Under the current provisions of Federal law, some States have enacted programs which contain a cutoff point on income which determines the financial eligibility of the individual. Thus, an individual with an income just under the specified limit may qualify for all of the aid provided under the State plan. Individuals, however, whose income exceeds the limitation adopted by the State are found ineligible for the medical assistance provided under the State plan even though the excess of the individual's income may be small when compared with the cost of the medical care needed. In order that all *States* shall be flexible in the consideration of an individual's income, the committee bill requires that the State's standards for determining eligibility for and extent of medical assistance shall take into account, except to the extent prescribed by the Secretary, the cost—whether in the form of insurance premiums or otherwise—incurred for medical care or any other type of remedial care recognized under State law. *Thus, before an individual is found ineligible for all or part of the cost of his medical needs, the State must be sure that the income of the individual has been measured in terms of both the State's allowance for basic maintenance and the cost of the medical care he requires.*" U.S.Code Cong. & Admin.News, 89th Cong., 1st Sess., 1965, pp. 2018–19 (emphasis added).

Pennsylvania may require, in its performance of the federal requirement in § 1396a(a)(17)(D), that all the plaintiff's income over the standard of need be spent on medical necessities before declaring her eligible for categorical assistance. But once the income over that level is spent—she must be given categorical assistance. This is brought out again in the Finance Committee's report:

"The State may require the use of all the excess income of the individual toward his medical expenses, or

some proportion of that amount. In *no event,* however, with respect to either this provision or that described below with reference to the use of deductibles for certain items of medical services, *may a state require the use of income or resources which would bring the individual's income below the amount established as the test of eligibility under the State plan.* Such action would reduce the individual below the level determined by the State as necessary for his maintenance." U.S.Code Cong. & Admin. News, 89th Cong., 1st Sess., 1965, pp. 2018–19.

A clearer expression of the legislative intent can hardly be conceived. Yet Pennsylvania is doing precisely that which Congress prohibited. It is requiring plaintiff to use income for medical expenses which would reduce her income "below the level determined by the state as necessary for (her) maintenance."

Commenting on the same legislation, Senator Ribicoff, who as previous Secretary of H.E.W. was particularly aware of the problems in this area, stated:

"Finally, the bill would require States to apply means tests on a flexible basis, so as to take into account not only the individual's income, but also the cost and extent of the medical care he requires.

"I think there is no question that these changes which H.R. 6675 will make in the way that means tests are applied by the States are sound. They strike a sensible balance.

"It is reasonable to allow States to make determinations of need and eligibility for public assistance programs; *but it is unreasonable to allow the standards of eligibility to be applied in such a way that they prevent assistance from reaching those who may need it most."* Cong.Record, 89th Cong., 1st Sess., July 6, 1965, p. 15804.

Those who need medical assistance most are those with the greatest medical need and expenses. The Pennsylvania standards of eligibility prevent Mrs. Brown from getting it.

In light of the anomalous classification of plaintiff for Medicaid purposes by defendant, and the total lack of real difference in her medical needs as a "disabled" individual from those under SSI who are "disabled", we conclude that the defendant's practice violates the applicable federal legislation.

Accordingly, we grant the plaintiff's motion for summary judgment.

*Other Motions*

Plaintiff has filed a motion for class action certification under Rule 23, F.R.Civ.P. However, because of our summary disposition of the issues in this case, class action treatment does not appear warranted at this time. Our holding as to plaintiff will bind defendant as to all members of the putative class who have similar claims, and class action certification in this case in its present posture will simply impede expedited treatment of the issues presented. As to the motions of John J. Edleblute and Clem McCoy to intervene as plaintiffs under Rule 24(b), F.R.Civ.P., we note that each has taken an appeal to the action of his County Board of Assistance. As such, intervention at this time would simply create additional issues and cause undue delay, thereby prejudicing the plaintiff. Accordingly, these motions will be denied.