**50 P.(2d) 430**

## GALLUP AMERICAN COAL CO. v. LIRA
### et al.
### No. 4098.

Supreme Court of New Mexico.

Sept. 16, 1935.

Wilson & Woodbury, of Silver City, and Harris K. Lyle, of Gallup, for appellant.

M. J. McGuinness, of Albuquerque, for appellees.

BRICE, Justice.

This is a proceeding under the New Mexico Workmen's Compensation Act (Comp. St. 1929, § 156-101 et seq.) by the widow and minor children of a deceased employee to recover compensation for his accidental death. The facts necessary to a decision taken from the court's findings (the legal effect only of which is in dispute) are as follows:

J. Trinidad Lira, an employee of appellant, was killed while working in the course of his employment. His average weekly earnings were $17.75. He was

married to Maria Jesus Barela Lira in Guanajuato, Mexico, on the 30th day of June, 1922. They moved to Colorado soon after they were married, where the two children, Teodoro Lira and J. Guadalupe Lira, were born. In 1926 the deceased sent his wife, accompanied by the two children, from Colorado to the republi: of Mexico, to care for his aged mother, who was sick. She nursed and cared for her until she died in 1933. · She was then ready to return when ordered by deceased, whose orders she apparently obeyed without question, but he never ordered her to return, so she remained and was living in Mexico at the time of her husband's death. He supported her and the children and visited them while they were in Mexico, and they were dependents of J. Trinidad Lira at the time of his death. There was no legal separation. On the third day of June, 1933, the deceased went through a marriage ceremony with Armenia Franco Lira, with whom he was living at the time of his death.

·It is unnecessary to state more of the facts found by the court, as it is admitted by all parties that if Maria Jesus Barela Lira and her children were residents of the United States at the time of the death of J. Trinidad Lira they are entitled to the compensation claimed, otherwise not.

The court concluded from the facts that Maria Jesus Barela Lira was the lawful wife of the deceased; that she and her children were residents of the United States and entitled to the compensation

provided under the Workmen's Compensation Act on account of the death of J. Trinidad Lira. The law involved is a part of section 156-120, Comp. St. 1929, which reads as follows:

"No claim or judgment for compensation, under this act, shall accrue to or be recovered by relatives or dependents not residents of the United States at the time of the injury of such workman."

The words "residence" and "resident" have no fixed meaning applicable to all cases, but are used in different and various senses, depending upon the subject-matter. 54 C. J. Title, Residence, §§ 1, 4 and 7; 54 C. J. Title, Resident, § 1.

"Most words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section." Atlantic Cleaners & Dyers v. U. S., 286 U. S. 427, 433, 52 S. Ct. 607, 608, 76 L. Ed. 1204.

Appellant contends that "not residents of the United States," as used in the quoted statute, means persons actually living out of the United States, irrespective of purpose, reason, or future intentions; while appellees insist that it is used in the sense of persons domiciled outside the United States or those whose legal residence is in a foreign country. ·

Appellant cites a number of cases, but relies principally on In The Matter of Securing Compensation By Mrs. Lee Yit Kyau Pang, 32 Hawaii, 699. The facts

of that case and the one at bar are to all intents and purposes identical; but the two statutes are different. The Hawaiian statute (Rev. Laws 1925, § 3611) reads:

"An alien shall not be considered a dependent within the meaning of this chapter unless actually residing within the United States, and any alien dependent leaving the United States shall thereupon lose all right to any benefits under this chapter."

The court stated:

"Claimant argues that the words 'actually residing within the United States,' as above used, have the same meaning as have the words, domiciled within the United States. In the interpretation of particular statutes the words 'residence' and 'domicile' have frequently been given the same meaning. In the statute now under consideration the word 'actually' adds something to the word 'residing' and, as we interpret it, differentiates the combination from that of 'constructively residing' or 'legally residing.' That the latter term generally connotes 'domicile' is not helpful to the claimant here. * * *

"Under the foregoing definitions, which we adopt so far as applicable, Mrs. Lee Yit Kyau Pang, at the time of her husband's injury, was 'actually residing' in China and therefore could not at the same time have been 'actually residing' in the United States, though her legal domicile, as recited in the board's statement of facts, was in this country. What the rule would be in cases of mere temporary absence from one's place of abode, as in transit, without 'actual residence' elsewhere, the facts in the present case do not require us to decide."

This construction is not in accord with the decisions of all courts. A number have construed "actual residence" to mean domicile or legal residence, Connolly v. Connolly, 33 S. D. 346, 146 N. W. 581; U. S. v. Anderson (D. C.) 238 F. 648; Bechtel v. Bechtel, 101 Minn. 511, 112 N. W. 883, 12 L. R. A. (N. S.) 1100; Carpenter v. Carpenter, 30 Kan. 712, 2 P. 122, 46 Am. Rep. 108, but is supported by a number of cases therein cited; also Doerner v. Doerner, 46 R. I. 41, 124 A. 728.

But the word "actual" that does not appear in the New Mexico act determined the question there. That part of the statute (Rev. Laws Hawaii 1925, § 3611) reading "and any alien dependent leaving the United States shall thereupon lose all right to any benefits under this chapter," lends force to the result reached in the case.

Appellant cited Colorado Fuel & Iron Co. v. Industrial Comm., 93 Colo. 188, 24 P.(2d) 1117, a case at least inferentially holding against it. The Colorado court concluded that the residence of a woman was that of her husband. That as they had moved to Mexico subsequent to his injury, where both were living at the time of his death, she was not a resident of the United States.

Bjolstad v. Pacific Coast S. S. Co. (D. C. Cal.) 244 F. 634, 637, cited by appellant, was an action in admiralty to recov-

er compensation in behalf of a seaman's widow, under the New Jersey Workmen's Compensation Act for the death of her husband, an alien. She lived in Norway and had never been in the United States. The act (P. L. N. J. 1911, p. 139, § 12) provided "compensation under this schedule shall not apply to alien dependents not residents of the United States." The court states:

"The deceased, Hansen, was a native of Norway, not naturalized in this country, although he had declared his intention to become a citizen. His widow and minor children, in whose behalf the action is brought, never left Norway, but were living there at the time of his death, and are living there still. They have never even been in this country temporarily. While one who has declared his intention to become a citizen of the United States thereby acquires a certain status and some rights, he still continues to be an alien, even though a seaman, until his naturalization has been completed, and his wife and children, living in the land of his nativity and who have never been in this country, are 'alien dependents not residents of the United States' within the meaning of the New Jersey law."

Stress is laid on the fact that the dependents had never been in the United States. None of the other cases cited by appellant are of any benefit in deciding the question.

If appellant's contentions are correct, then the Legislature did not intend that compensation in such cases should be paid to a dependent residing temporarily outside the United States, irrespective of the reason or purpose therefor.

The Workmen's Compensation Acts of a number of the states provide that a wife is not a dependent entitled to compensation unless living with her husband at the time of injury. In construing such statutes, it is generally held that notwithstanding she may be living apart, yet in a legal sense she is living with her husband if they have not permanently separated, and the husband is legally bound to support her. See note to 86 A. L. R. 883, and previous annotations of the question in that series of reports where the cases are collected; and generally see cases cited in 2 Schneider's Workmen's Compensation Laws, § 369.

To give the courts jurisdiction, the statutes of Kentucky required a residence on the part of the plaintiff of a year next preceding the filing of a suit for divorce. In Cummings v. Cummings, 133 Ky. 1, 117 S. W. 289, the facts were that plaintiff's home had been in Kentucky, but for the purpose of making a living she had been compelled to go temporarily into another state. After a year she returned to her home state and filed a suit for divorce. The court, on plea to its jurisdiction, held that notwithstanding she had been temporarily absent for a year, still she was a resident of Kentucky. We quote the following from Boreing v. Boreing, 114 Ky. 522, 71 S. W. 431, 432, in which case the

facts showed that plaintiff had been absent from the state eight years when she returned to Kentucky and filed an action for divorce:

"We do not think that appellant lost her residence in Kentucky by the fact that, in order to maintain herself, she left the state. She was still the wife of appellee, and his residence was her residence, and continued to be so during all of the time that she was absent. The separation commenced in Kentucky, and, if it be necessary, in order to obtain a divorce on the grounds relied upon in this action, that her home should have been in Kentucky during the five years specified, we think that the facts in this case show that appellant had the necessary residence here."

In the case of Chitty v. Chitty, 118 N. C. 647, 24 S. E. 517, 518, 32 L. R. A. 394, the court stated:

"The word is frequently used in the sense of bodily presence in a place, sometimes a mere temporary presence, and sometimes the most settled and permanent abode in a place, with all the shades of meaning between these extremes, and also with reference to the distinction between an actual and legal residence. So it seems entirely proper to consider its meaning in connection with the subject-matter and the purpose of the statute in which it is found, as well as the relation of the citizen to the subject-matter. The leading purpose of the constitution (article 10, §§ 1–3, 8) is to secure the homestead to the debtor and his family, and the term 'resi-dent' therein should be so construed as to accomplish that purpose, unless there should be found some positive or necessary and reasonable rule of law to the contrary. Absence from the state does not necessarily mean a change of residence in the legal sense, as that question depends upon the intention and other facts. * * * The general rule from the cases is that when one leaves the state with the intention of returning he does not lose his residence here. This will do for the present case; but, to avoid any extreme conclusions from the above statement, we will say that circumstances may easily lead to a different result; for instance, if the lapse of time should be long enough to rebut such intention, or if a residence should be acquired in another state, or by engaging in permanent business elsewhere, without the animo revertendi, or by assuming the duties and privileges of a citizen in such other state."

Also see the following cases: Bechtel v. Bechtel, 101 Minn. 511, 112 N. W. 883, 12 L. R. A. (N. S.) 1100; Willingham v. Swift & Co. (C. C.) 165 F. 223; People ex rel. Larson v. Gordon, 283 Ill. 366, 119 N. E. 318.

We do not have to go beyond the literal language of the statute to arrive at its meaning, but need only choose a meaning from recognized definitions of the word "resident" that would be consistent with the spirit and intent of the New Mexico Workmen's Compensation Act.

The Legislature evidently intended that dependents of alien laborers who had never lived in the United States or, who having been domiciled here, had permanently left this country, should not be beneficiaries under this act; but that those dependents who are domiciled in the United States should be beneficiaries thereunder. If the phrase "not residents of the United States" should include those temporarily absent or those like Mrs. Lira prevented from returning on account of a sick person she was caring for, or other like reasons, the beneficent intention of the Legislature would in many instances be thwarted.

We hold that "not a resident of the United States" as contemplated by the statute does not apply to one domiciled in the United States, although living in another country; if in fact there was always the intention to return to the domicile and never an intention that such temporary residence should be a permanent abode. Long absence would ordinarily be persuasive evidence of nonresidence it is true, but not necessarily conclusive.

Do the facts found by the court bring the case within the statute as here construed; and are such findings supported by substantial evidence? On this feature of the case it is provided by section 68-102, Comp. St. 1929. "The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto." The home or domicile of the husband is that of his wife. We quote the following from Howland v. Granger, 22 R. I. 1, 45 A. 740:

"After a careful examination of the authorities, however, we have come to the conclusion that, though a wife may acquire a domicile distinct from that of her husband, whenever it is necessary or proper for her to do so,—as, for instance, where the husband and wife are living apart by mutual consent * * * or where the wife has been abandoned by the husband * * * or for purposes of divorce * * * or, in short, whenever the wife has adversary interests to those of her husband,—she cannot acquire such a domicile so long as the unity of the marriage relation continues, notwithstanding that from considerations of health, as in the present case, or of expediency, one of the parties, with the consent of the other, is actually living in a different place from the other." Also, see, McClellan v. Carroll (Tenn. Ch. App.) 42 S. W. 185.

The Supreme Court of Oklahoma in the case of First National Bank v. Coates, 62 Okl. 142, 161 P. 1095, 1096, construed the meaning of the word "non-resident" as used in that state's exemption statute. The defendant had left his homestead and gone to Canada with his family and there rented a farm. While there his homestead was attached for debt. The defendant appeared and moved to dissolve the attachment, claiming a homestead exemption as a resi-

dent of Oklahoma, as provided by its statutes. The court, after holding that exemption laws should be liberally construed, stated:

"Applying to the evidence in this case the rules of law hereinbefore cited, we are of the opinion that the defendant did not lose his right to claim his homestead exemption by his temporary removal to Canada with intention of returning to Oklahoma. So long as he remained domiciled in the state, the defendant did not lose his right to claim his exemption by reason of his temporary removal to and sojourn in Canada with intention of returning to Oklahoma and his homestead. * * * In construing the homestead laws of the state, a nonresident of the state must be defined to be one who ceases to be domiciled in the state, or who never was a resident of the state, or who having been domiciled in the state, thereafter has acquired a permanent residence in another state."

According to the court's findings, Mrs. Lira had never established a residence in Mexico, but was a resident of the United States. These findings are supported by substantial evidence. Deceased went to Mexico for his family about three years before his death; and Mrs. Lira wanted to return with him, but because of the serious illness of his mother he ordered her to remain and continue to care for her. The case is extreme, but we cannot say that the district judge erred in his conclusions.

Finding no error in the record, the judgment of the district court is affrmed.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.