507 P.2d 795

Ossie CHAVEZ, Appellant,

v.

NEW MEXICO HEALTH AND SOCIAL SERVICES DEPARTMENT, Appellee.

No. 983.

Court of Appeals of New Mexico.

Feb. 2, 1973.

Rehearing Denied Feb. 26, 1973.

Joseph T. Sprague, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., James G. Huber, Agency Asst. Atty. Gen., Richard A. Griscom, General Counsel, N. M. H. S. S. D., Santa Fe, for appellee.

OPINION

WOOD, Chief Judge.

Mrs. Chavez was denied Aid to the Disabled (AD) benefits on the basis that her income exceeded her need when computed by the department's standards. She appeals.

We reverse.

Mrs. Chavez is a diabetic with advanced heart disease. She receives disability benefits from the federal government under the Social Security Act. Prior to June 1, 1971, her social security benefits were $111.50 per month. The department stand-

ard for her need was $116.00. As a result, she was declared eligible for and did receive state welfare assistance under AD to cover the deficit between her defined needs and her resources.

Effective June 1, 1971, social security benefits were raised 10% which raised her benefits to $122.50. The department terminated her medical assistance from the state as of May 31, 1971, because it found that Mrs. Chavez' need was $116.00, and her income exceeded her need by $6.50. In March or April, 1972, Mrs. Chavez reapplied for assistance as a disabled person. The denial of this application is the basis for this appeal. The denial was on the same basis as the termination of assistance in 1971—that her income exceeded her need, as determined by the department, by approximately $6.50 per month.

The undisputed medical evidence is that certain medicine for the heart condition is required; that without this medication Mrs. Chavez will either become very ill or die. The hearing officer for the department found that Mrs. Chavez' medical needs "easily amount to $30.00 a month, and this would be a conservative figure."

The department takes the position that it has no obligation, under the law, to take Mrs. Chavez' undisputed medical needs into consideration in determining whether her available resources exceed her needs as determined by the department.

The department's position is based primarily on federal law and regulations concerning public assistance. Its view is that federal law and regulations do not require the department to assist Mrs. Chavez and, not having voluntarily established a program which would assist Mrs. Chavez, it has no legal obligation to do so.

This approach by the department is based on a distinction, in federal programs, between the "categorically needy" and the "medically needy." See Fullington v. Shea, 320 F.Supp. 500 (D.C.Colo.1970), aff'd 404 U.S. 963, 92 S.Ct. 345, 30 L.Ed.2d 282 (1971). We need not determine whether the department's view of federal requirements is a correct one. Compare Crammer v. Commonwealth Dept. of Public Welfare, 449 Pa. 528, 296 A.2d 815 (1972). We do not consider federal requirements because state law requires that Mrs. Chavez be given assistance.

Section 13–1–11, N.M.S.A.1953 (Repl. Vol. 3) states that public assistance *shall* be granted to a needy person who has insufficient income or resources to provide a reasonable subsistence compatible with decency and health. In Baca v. New Mexico Health & Social Services Dept., 83 N.M. 703, 496 P.2d 1099 (Ct.App.1972), in a similar factual situation, the issue was whether there was substantial evidence to support the finding, that Baca had income greater than his need.

The department does not discuss the evidence at the hearing. Rather, it states that New Mexico's standard of financial eligibility for AD is $116.00, Mrs. Chavez' income was $122.50, and that these statements constitute substantial evidence to support the decision. This does not meet the standards stated in *Baca*, supra.

In *Baca*, supra, this court said:

". . . However, in order to subsist (live) he must continue his medical treatment. . . . Baca does not in fact have 'resources available' to meet his monthly needs as determined by the Department. . . ."

The same fact is true in this case. By deducting the medical need, Mrs. Chavez' "income" from social security benefits is reduced $30.00 per month. This leaves her $92.50 per month for subsistence compatible with decency, an amount below the standard of need determined by the department. The decision of the department is not supported by substantial evidence.

In spite of the wording of § 13–1–11, supra, and the *Baca*, supra, decision, the department asserts it is not required under state law to establish a program for the medically needy. It relies on § 13–1–54, N.M.S.A.1953 (Repl.Vol. 3) and provisions in the Appropriation Acts of 1969 and 1972 (Laws 1969, ch. 282 at 1141 and Laws

1972, ch. 98 at 681). By this argument, the department attempts to re-define the issue in this appeal. We do not have as an issue whether the department must establish a program for the medically needy; thus, the above identified legislative provisions are not applicable. The issue here is whether Mrs. Chavez is eligible to receive public assistance under an existing program, and that issue is resolved by determining whether there is evidence to support the findings made. In this case, the evidence does not support the finding that Mrs. Chavez has income in excess of her needs. The evidence is insufficient because ". . . resources which are not in fact available to meet current needs are not to be considered in determining eligibility for public assistance." Baca, supra.

This cause is reversed and remanded for proceedings consistent herewith.

It is so ordered.

HENDLEY and SUTIN, JJ., specially concurring.

HENDLEY, Judge (specially concurring).

I concur in Judge Wood's opinion. This special concurrence is written because his opinion does not discuss an additional aspect.

Mrs. Chavez' reapplication for assistance as a disabled person was formally denied on May 4, 1972, the day the New Mexico Supreme Court denied a petition for a writ of certiorari to review the Court of Appeals decision in the Baca case cited by Judge Wood.

The decision in the Baca case was final when, on June 1, 1972, an administrative hearing was held on Mrs. Chavez' appeal from the denial of her application for assistance as a needy person. At that hearing, a representative of the Legal Aid Society, on behalf of Mrs. Chavez, brought the Baca decision to the hearing officer's attention. The reference to the Baca decision appears in the record of the administrative hearing.

According to the letter of the executive director of the department dated June 19, 1972, the "Appeals Review Committee" had studied the transcript of that hearing. In denying Mrs. Chavez' appeal, the review committee wrote a legal opinion to the effect that the department was not required to provide public assistance under federal law. This opinion ignores state law and state decisions. This opinion is signed by a "welfare administrator," the "chief attorney" and the "legal assistant to the executive director." The executive director adopted the recommendations of the appeals review committee.

In this court, Mrs. Chavez' brief in chief relies on and discusses the Baca decision. The department's answer brief ignores that decision. The department did not acknowledge the existence of the Baca decision until its attorney was specifically asked about the decision, from the bench, during oral argument.

We are not dealing here with a governmental agency that can plead ignorance of the Baca decision or that was without advice of counsel. The record charges HSS with knowledge of the Baca decision, at least from the time of the administrative hearing. The record shows HSS has proceeded with advice of counsel.

In this state of the record, I would have caused contempt citations to be issued by this court directed to the attorneys and high administrative officials identified of record to require an explanation of why HSS has systematically avoided acknowledging the existence of a decision to which HSS was a party, which decision was final prior to pertinent events in this case. Alternatively, I would have reversed the HSS decision in this case because of violation of Rules of Appellate Procedure. The refractoriness of HSS, disclosed by this record, should not go unacknowledged by this court.

SUTIN, Judge (specially concurring).

All appeals to this court are based upon the record made at the fair hearing pro-

vided for in § 13–1–18, N.M.S.A.1953. Section 13–1–18.1(B), N.M.S.A.1953 (Repl.Vol. 3, Supp.1971). For an indigent to recover Aid to the Disabled, this record must show an effective presentation of the indigent's case at the hearing.

We have authority to set aside the decision or order of the director ". . . only if found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record as a whole; or (3) otherwise not in accordance with law or department regulation." Section 13–1–18.1, supra.

What is a "fair hearing" by a hearing officer in the manner and form prescribed by the State Board of Public Welfare as provided in § 13–1–18, supra?

". . . The primary purpose of the fair hearing is to provide for any dissatisfied applicant . . . an opportunity to assert his claim and to secure, in *an administrative proceeding,* equity of treatment in relation to the *state's assistance laws and standards.*" Regulation 275.2. [Emphasis added.]

"The right to a fair hearing includes the right to be advised of the nature and availability of such a hearing, *to receive any needed help in preparing for or participating in it, to have a hearing which fully safeguards his opportunity to present his case. . . .*" Regulation 275.31. [Emphasis added.]

"Responsibility for conduct of the hearing is delegated to a hearing officer. . . ." Regulation 275.32.

"The claimant shall be given written notice of the date, time and place the hearing is to be held. *He shall be given an explanation of the hearing process* and *of the procedures to be followed* so that he will have sufficient time and a *sufficiently clear understanding of what is needed, to prepare an effective presentation of his case* and to secure witnesses or *legal counsel,* if he desires. The claimant must be advised that the agency has no provision for the payment of the costs of any *legal counsel* whom he may wish to secure. *The County office, however, will provide information and referral services to help the claimant avail himself of any legal services existing in the community that can provide legal representation at the hearing.*" Regulation 275.46. [Emphasis added.]

(A) MRS. CHAVEZ DID NOT RECEIVE A FAIR HEARING.

We are bound by the record, made at the fair hearing, which comes to this court. Section 13–1–18.1(B), supra.

(1) *Mrs. Chavez did not Have the Assistance of Legal Counsel.*

The record shows that Mrs. Chavez was represented at the hearing by a law clerk of the Legal Aid Society of Albuquerque, Inc. The hearing officer knew this. A law clerk is not authorized to practice law before an administrative agency. The Legal Aid Society of Albuquerque has furnished legal services to Bernalillo County's indigents since 1947. It has a full-time director, eleven full-time staff attorneys and others, with three full-time law clerks. The reasons for free legal services are obvious. The machinery of justice operates through attorneys, and the poor cannot pay for their services. Krehbieh, Legal Aid; New Mexico's Unfulfilled Responsibility, 1 N.M.Law Rev. 299 (1971); see, Robb, Poverty Lawyers' Independence—Battle Cry for Justice, 1 N.M.Law Rev. 215 (1971).

The rules and regulations adopted by the State Board are manifold. The problems of procedure, the examination and cross-examination of witnesses, knowledge of law, are all solved by experienced attorneys. The assistance of counsel has been held a fundamental requisite of "fair hearing." Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932); see, 35 C.J.S. at 598 (1960). The State Board had a duty to inform Mrs. Chavez that she should obtain legal representation at the hearing.

The hearing officer is a quasi-judicial officer. In this administrative hearing, the

proceedings should be conducted as much in accordance with fundamental principles of justice and fairness as are judicial trials. Jones v. State Dept. of Public Health and Welfare, 354 S.W.2d 37 (Mo. Ct.App.1962).

A review of the record on appeal shows that Mrs. Chavez, without legal assistance, did not receive a fair hearing.

### (2) Mrs. Chavez was not Informed of her Rights.

The record does not disclose that Mrs. Chavez was given an explanation of the hearing process or how to prepare an effective presentation of her case, nor any of the other rights to which she was entitled under the regulations, supra. Neither does the record show a proper investigation of Mrs. Chavez' application. Section 13-1-13, N.M.S.A.1953 (Repl.Vol. 3).

The decision and order of the director was not in accordance with law or department regulations.

### (B) MRS. CHAVEZ' INCOME DID NOT EXCEED HER NEED

The director denied Mrs. Chavez assistance because there was no deficit between need and income as required by Regulation 231.84 for eligibility.

Regulation 231.841 provides that total needs are determined by adding up the requirements for the budget group, i.e., shelter, $37.00; utilities, $19.00; one adult living alone, $60.00; for a total of $116.00 per month for a lone indigent. The director did not add on to this total need the medical needs of $30.00 per month which would make her needs greater than her income of $122.50. The department admits in its brief:

A State plan *must* provide that medical assistance will be available to certain "categorically needy" individuals. 45 C. F.R. 248.10(b)(1). The "categorically needy" are those individuals who are in need under the State's standards of financial eligibility in the State's approved plan for categorical assistance, i.e., cash assistance for the . . . disabled. . . . 45 C.F.R. 248.10(a)(1).

Based on these rules, the department claims it can omit medical assistance because the state does not have a cash assistance program for Mrs. Chavez. She receives her income from social security benefits.

The department does not explain away Baca v. New Mexico Health & Social Services Dept., 83 N.M. 703, 496 P.2d 1099 (Ct.App.1972), directly in point. Until it is able to skirt around Baca, it has a duty to follow that decision. It must not arbitrarily or capriciously deny an indigent "reasonable subsistence compatible with decency and health." Section 13-1-16, N.M. S.A.1953 (Repl.Vol. 3).

The judgment of the department was arbitrary and capricious.

This judgment should be reversed.