573 P.2d 689

**Ruben PEREZ, Appellant,**

v.

**HEALTH AND SOCIAL SERVICES, Department of the State of New Mexico, Appellee.**

**No. 3020.**

Court of Appeals of New Mexico.

Dec. 20, 1977.

Writ of Certiorari Denied Jan. 13, 1978.

Clark De Schweinitz, Espanola, for appellant.

Toney Anaya, Atty. Gen., Robert P. McNeill, Gordon L. Bergman, Special Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

Ruben Perez, an undocumented Mexican alien, was denied the benefits of the Special Needs Act even though he met the statutory eligibility requirements. Section 13–15–1, et seq., N.M.S.A.1953 (Repl. Vol. 3, pt. 1). HSSD erred. We reverse and remand.

The record is scanty. It appears that Mrs. Perez applied at the Rio Arriba County office for medical aid for her husband on December 27, 1976. The application was denied because claimant, Ruben Perez, was not a citizen of the United States or a lawful alien. Perez appealed, a hearing was held and the hearing officer concluded that "The Manual regulation for eligibility for category 54 does not mention citizenship, and Perez' appeal should be upheld." But the Fair Hearing Review Committee did not concur in upholding the appeal. The Chairman of the Appeals Review Committee submitted the Fair Hearing Appeal to the Executive Director of the Health and Social Services Department with a memorandum stating the reasons and authorities why no assistance could be granted by the State of New Mexico to Mr. Perez. The appeal was then denied by the Executive Director on April 18, 1977. Perez appeals to this Court as provided by law.

Section 13–15–5 provides in pertinent part:

A person is eligible for medical care under the Special Medical Needs Act if:

\*    \*    \*    \*    \*    \*

F. he is *a resident* of New Mexico. [Emphasis added.]

Regulation 351.6, entitled Residence in New Mexico, reads:

To be eligible . . . *a person must be physically present in New Mexico* on the date of application or final determination of eligibility and have demonstrated *intent to remain in the State.* [Emphasis added.] Public Assistance Manual, N.M. HSSD, February 1976.

Regulation 351.62(B) entitled Intent to Remain in the State, reads:

Since proof of intent to remain in the State involves proof of a state of mind, it is necessary to establish the subjective intent through the existence of subjective manifestations of that intent. . . .

The meaning of the words "person," "resident," and "intent to remain" are the controlling factors of eligibility in Mr. Perez' case.

█ We have held that the word "person" in the Wrongful Death Act included a non-resident alien who was present illegally in the state; that an alien, who is a citizen of a friendly country, and who entered the United States illegally, was entitled to maintain an action for personal injuries; that no restrictions were placed on aliens in the Wrongful Death Act and that this fact represents the public policy of this State. *Torres v. Sierra*, 89 N.M. 441, 553 P.2d 721 (Ct.App.1976). Perez is, of course, a person within the meaning of the Special Medical Needs Act.

"The words 'residence' and 'resident' have no fixed meaning applicable to all cases, but are used in different and various senses, depending upon the subject-matter." *Gallup American Coal Co. v. Lira*, 39 N.M. 496, 497, 50 P.2d 430, 431 (1935). In this case, a section of the Workmen's Compensation Act denied compensation to "relatives or dependents not residents of the United States at the time of the injury of such workman." Nevertheless, the Supreme Court held that a Mexican wife of a deceased Mexican husband could receive workmen's compensation benefits as a resident of the United States, though she spent seven years in Mexico nursing his mother and was not physically present in the United States at the time of his death. Although not stated in the case, it appears from the detailed facts that husband and wife were unnaturalized aliens of the United States. In other words, an undocumented alien could be a resident of the United States within the meaning of the Workmen's Compensation Act.

█ It has uniformly been held that words denote their ordinary meaning unless a different intent is clearly indicated. Specifically, the word "residence" as used in a statute pertaining to liability for payment of medical assistance should be given its ordinary and common meaning. *Andrews v. Lavine*, 46 A.D.2d 834, 361 N.Y.S.2d 88 (1974). We will not read into a statute language that is not there if it makes sense as written. *Burroughs v. Board of Ct. Com'rs, Cty. of Bernalillo*, 88 N.M. 303, 540 P.2d 233 (1975); *State ex rel. Barela v. New Mexico State Bd. of Ed.*, 80 N.M. 220, 453 P.2d 583 (1969).

There is statutory authority showing that the legislature used resident to mean those who are and are not citizens of the United States. See § 53–3–1.3, N.M.S.A.1953 (Repl.Vol. 8, pt. 1, 1975 Supp.) which defined a "resident" entitled to purchase a resident hunting and fishing license.

In addition, New Mexico common law posits guidelines for determining whether a person is a resident or not:

The question of whether a person is a resident of one place or another is largely a question of intention, and, where the intention and the acts of the party are in accord with the fact of residence in a given place, there can be no doubt of the fact that such party is a bona fide resident of the place where he intends to and does reside, and that he has the right to

exercise all the rights and privileges accorded actual residents of such place, provided he comes within the provisions of the law regulating such rights. [*Klutts v. Jones*, 21 N.M. 720, 727, 158 P. 490, 492, L.R.A. 1917 A, 291 (1916).]

█ A "residence" is the place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; the house where one's home is; a dwelling house. *Jernigan v. Capps*, 187 Va. 73, 45 S.E.2d 886 (1947), 175 A.L.R. 1182 (1948); *Buckheim v. Buckheim*, 231 Minn. 333, 43 N.W.2d 113 (1950); *Berry v. Wilcox*, 44 Neb. 82, 62 N.W. 249 (1895).

In the Statement of the Case, Perez' attorney states:

> While he (Perez) has lived within the United States for over seven years and resided in the northern part of New Mexico for practically all of that time, he is not a naturalized citizen of the United States.

HSSD did not dispute this statement. It is undisputed that Perez is a resident of this State, and intends to continue living in this State.

█ The subjective intent of Perez to remain a resident of the State was established during the "fair hearing" on this matter. A state welfare worker for HSSD testified that Perez fit the residence requirement and there was no problem about his intention to remain. This uncontradicted testimony was sufficient to establish subjective intent to remain a resident of this State.

Perez met all of the requirements of eligibility for medical assistance as required by the Special Medical Needs Act and the regulations adopted pursuant thereto.

█ HSSD contends that because Perez is an undocumented alien, the case becomes a matter of immigration control, and federal law (through the supremacy clause) preempts the State's application of the Special Medical Needs Act to Perez. We disagree.

The Act is wholly state-funded and makes no reference that HSSD is authorized to cooperate with the federal government in establishing and administering it. An analysis of the Special Medical Needs Act was made by Associate Professor Joseph Goldberg of the University of New Mexico School of Law in an article entitled *Welfare Reform and the 1973 New Mexico Legislature*, 4 N.M.L.R. 1 (1973). Professor Goldberg says:

> It is certainly not clear why the legislature would specifically refuse to cooperate in the "Medically Needy" Medicaid program where substantial federal financial support was available, *and then set up a substantially identical program to be funded exclusively with state monies. Yet, apparently that is precisely what occurred. . . .* One may only speculate that the right legislative hand did not know what the left legislative hand was doing. In any event, this peculiar legislative lacuna seriously calls into question the legitimacy of any attempt by HSSD to obtain federal funding for the "Special Medical Needs" program or a "Medically Needy" Medicaid program under the Social Security Act. (Id. 22) [Emphasis added.]

Presently, it appears that the Special Medical Needs Act is the only state-funded statute in the United States. See Conard, *Health Care For Indigent Illegal Aliens: Whose Responsibility?* 8 Univ. of Calif. at Davis L.R. p. 107 (1975). The article is focused primarily on California. However, the author says:

> Thus, while it may seem paradoxical to speak of our responsibility to other countries' citizens, the plight of illegal aliens can be ignored no longer because its presents significant humanitarian, public health, and legal problems to the United States. [p. 108]

New Mexico has met that challenge. It has assumed the responsibility of financing health care for illegal aliens.

We have consistently held that the department is bound by its own regulations. *Martinez v. Health & Social Services Dept.*, 90 N.M. 345, 563 P.2d 608 (Ct.App.1977).

We place the violation of the regulation, not upon the Executive Director, but upon his legal advisors who let him astray. HSSD does not dispute the fact that Perez was a person physically present in New Mexico at the time of eligibility. Its argument indicates that Perez should be shipped out of the country or left here to die. We disagree. HSSD's duty to human beings in serious medical condition cannot be thwarted by a misconstruction of the statute or a violation of its regulations. See, *Chavez v. New Mexico Health and Social Serv. Dept.,* 84 N.M. 734, 507 P.2d 795 (Ct.App.1973).

The case is reversed and remanded to the Executive Director to declare that Perez is eligible for medical care under the Special Medical Needs Act.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.