765 P.2d 157

**UNIVERSITY OF UTAH HOSPITAL, Plaintiff–Appellant,**

v.

**ELMORE COUNTY, Elmore County Board of Commissioners and Clerk of Elmore County, Defendants–Respondents.**

No. 17216.

Court of Appeals of Idaho.

Dec. 1, 1988.

Dean Williams, Blackfoot, for plaintiff-appellant.

Gene Lowell Gustafson, Mountain Home, for defendants-respondents.

WALTERS, Chief Judge.

This is a medical indigency case. The University of Utah Hospital appeals the district court's judgment in favor of the defendants, arguing that Elmore County is liable for the medical bill of an indigent Idaho resident because the county failed to notify the hospital of its decision to deny the patient's medical indigency (MI) application within the sixty-day time limit pro-

---

vided under I.C. § 31–3505.[1] We hold that (1) the trial judge properly allocated the burden of producing evidence at trial; (2) the court's finding that Elmore County had sent the hospital a timely notice of denial was not clearly erroneous; and (3) the district court correctly concluded that the hospital's claim was barred pursuant to I.C. § 31–3505. We therefore affirm the judgment.

Essentially, the facts found by the trial court show the following. Steven Cassell was admitted to the appellant hospital on August 26, 1983, with severe burns over most of his body. Cassell was treated and discharged from the hospital on November 6, 1983, after accruing charges for care and services in an amount exceeding $55,000. Because Cassell appeared financially unable to pay his bill, the hospital submitted an application for MI assistance to the Ada County board of commissioners, the county where Cassell resided at the time he was hospitalized. The Ada County board of commissioners denied the hospital's MI ap-

plication, stating that it was not obligated to pay the claim.[2] A copy of the MI application was also sent by the hospital to Elmore County, where Cassell had previously resided. That application was received by the Elmore County clerk on October 17, 1983.

The parties disagree as to what occurred after Elmore County received the MI application. According to the county, its clerk brought the MI application before the board of commissioners, who subsequently denied it either on November 28 or on December 12, 1983. The county clerk maintains that shortly after the commissioners' decision, she prepared a written notice of denial of the MI application and mailed the notice to the hospital. The clerk admitted that she, herself, did not mail the notice; rather, it was taken to the post office by a member of the clerk's clerical staff. A copy of the denial notice—introduced at trial—did not indicate when the notice had been mailed. To the contrary,

1. At the times pertinent here, I.C. § 31–3505 provided:

> If the board of county commissioners fails to act upon an application within sixty (60) days from the receipt of said application, it shall notify the applicant in writing, or upon its failure to give notice within said time, the application shall be deemed approved, and the applicant entitled to payment as if said application had been approved.

> If the application is denied, the applicant may request a hearing before the board of county commissioners. The applicant shall be entitled to judicial review of the decision of the board, in substantially the manner provided in the administrative procedures act, chapter 52, title 67, Idaho Code.

2. The Ada County denial, dated November 21, 1983, evidently was based upon the county's interpretation of I.C. § 31–3506, dealing with residency requirements of MI applicants. At the time, the statute read in pertinent part:

> Payment for hospitalization of a medically indigent individual shall be provided by the county in which such individual maintained a residence immediately preceeding hospitalization or institutionalization. If such individual has not resided in any county of Idaho for a period of six (6) months within the five (5) years preceeding hospitalization, then the county where the individual maintains a residence immediately preceeding hospitalization shall be the obligated county.

The above-quoted provisions of the statute were the result of amendment by the Legislature in 1976. Prior to the 1976 amendment, the statute required the medically indigent individual to be a resident of the county for a period of six months before that county could be obligated to provide MI assistance. Subsequent to the denial by Ada County of the application filed by the hospital in this case, the meaning of I.C. § 31–3506 was clarified by the Idaho Supreme Court in *Intermountain Health Care, Inc. v. Board of County Commissioners of Madison County*, 109 Idaho 685, 710 P.2d 595 (1985). There, the Court held that a medically indigent person's residence at the time of hospitalization should be used to determine the county responsible for the payment of the MI hospitalization costs.

In its brief, the hospital states that Ada County would not entertain the hospital's request under I.C. § 31–3505 for a hearing on the denied application because the request was not made within thirty days from the hospital's receipt of the denial notice. Although the hospital arguably may have some remedy for Ada County's refusal to grant the requested hearing on the hospital's MI application, *see.University of Utah Hospital v. Clerk of Minidoka County*, 114 Idaho 662, 760 P.2d 1 (1988), resolution of that issue is a collateral but independent inquiry not yet developed through any proceeding in a lower court. The propriety of the Ada County action therefore is beyond the scope of the instant appeal.

the hospital contends that it never received a notice of denial from Elmore County.

On August 26, 1985, the hospital wrote a letter to Elmore County, stating that it had not received notice of denial on the MI application, and therefore, pursuant to I.C. § 31–3505, the application would be deemed approved. The hospital subsequently sent Elmore County a claim for the amount of Cassell's hospital bill. Upon receipt of this claim, the county clerk called the hospital to inquire about the denial mailed in 1983. According to the county clerk, she was told by the hospital's MI application agent that, although Cassell's file did not contain a copy of the Elmore County notice of denial, the denial notice had been received by the hospital and had been forwarded to its attorney. To the contrary, the hospital maintains that the agent was referring to the Ada County denial notice rather than the notice from Elmore County. Shortly after the clerk's inquiry, the Elmore County board of commissioners denied the hospital's claim for Cassell's hospital expenses.

The hospital sued Elmore County on April 2, 1986, alleging that due to the county's failure to send a timely notice of denial, the hospital's MI application was deemed approved. The hospital sought payment of Cassell's unpaid medical bills as damages. In its answer, Elmore County denied the hospital's allegations. The county also asserted, as affirmative defenses, that the hospital's claim was barred by a six-month statute of limitation on actions against counties (I.C. § 5–221), that it was barred by laches, and that a timely denial of the MI application had been made. In a memorandum decision, the trial court found in favor of the defendants, concluding that Elmore County had properly and timely mailed a notice of denial to the hospital, under I.C. § 31–3505.

This appeal presents two principal inquiries. First, the hospital contends that, because the denial of the application was pled by the county as an affirmative defense, Elmore County carried the burden of proving that written notice of denial of the MI application was sent to the hospital within the sixty-day time limit specified under I.C. § 31–3505. In this regard, the hospital argues that the trial court improperly allocated the burden of proof to the hospital. Second, the hospital maintains the district court erred in concluding that Elmore County had timely notified the hospital of the denial of the application within the sixty-day period prescribed under I.C. § 31–3505. We will address each of these contentions in turn.

■ With respect to the burden of proof issue, the hospital submits that the trial court improperly placed the burden on the hospital to show that a notice of denial was not received, rather than requiring Elmore County to prove that the notice was actually sent. The hospital argues that Elmore County bore the burden of showing a timely notice had been sent because Elmore County had alleged that fact as an affirmative defense. We do not agree with the hospital's analysis. Although designated in its answer as an affirmative defense, Elmore County's allegation that a timely notice had been sent was not in reality a new issue on which the county was the proponent. Rather, it was a statement simply controverting the hospital's claim that a notice had not been sent. Thus, although the county's statement may have been pleaded in the form of an "affirmative defense," its true function was to deny an allegation contained in the hospital's complaint. The evidence showing transmittal of the notice was not adduced by the county to satisfy a proponent's burden of proof; it was presented to refute the hospital's evidence that no notice had been sent because none purportedly was received. Based on this functional analysis, we hold that the district court did not err in placing the burden of proof on the hospital as the true proponent of the issue. *Cf. Lindsay v. Wyatt,* 1 Idaho 738 (1878) (adopting functional analysis to determine whether issue should be characterized as affirmative defense).

Next, the hospital contends that the district court erred in its resolution of the claim-denial issue on the merits. The hospital asserts that the record shows a failure

by Elmore County to deny the MI application within the sixty-day period allowed by I.C. § 31–3505. As a result, the hospital contends that Elmore County is liable for the entire amount of Cassell's unpaid medical bill.

Idaho Code § 31–3504 permits an applicant to file an MI application with a "chargeable county" within a reasonable time after the patient is admitted to the hospital. *University of Utah Hospital v. Clerk of Minidoka County, supra.* The county must act upon the application within sixty days. *University of Utah Hospital v. Ada County,* 111 Idaho 1023, 729 P.2d 1086 (Ct.App.1986). If the county fails to notify the applicant in writing of its decision within this period, the application is "deemed approved," permitting the applicant to collect the full amount legally allowable on the claim. *Id.* This time requirement is strictly enforced against the county. *University of Utah Hospital v. Twin Falls County,* 113 Idaho 447, 745 P.2d 1068 (Ct.App.1987).

Upon review, findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Consequently, our standard for reviewing a trial court's findings and conclusions is to determine whether the factual findings are supported by substantial, competent evidence, and to determine whether the trial court properly applied the law to the facts as found. *Bischoff v. Quong-Watkins Properties,* 113 Idaho 826, 748 P.2d 410 (Ct.App.1987). Due regard will be given to the trial court's opportunity to weigh conflicting testimony and to judge the credibility of witnesses. *Price v. Aztec Ltd., Inc.,* 108 Idaho 674, 701 P.2d 294 (Ct.App.1985).

In this case, a question of fact was presented with regard to whether Elmore County timely notified the hospital of the denial of the MI application. Our review of the court's resolution of the question is limited to determining whether the trial judge's decision was clearly erroneous. At trial, the county clerk testified that, although the denial notice was not dated, it was mailed to the hospital some time in November or December, 1983. The clerk also testified that while she did not personally mail the denial, it was taken to the post office by a member of her staff. Furthermore, the three members of the county's board of commissioners testified that they had denied the hospital's MI application some time during late 1983. Also, an exhibit submitted at trial—a certified copy of the minutes of the board of commissioners' meeting of December 12, 1983—shows that the Cassell claim was disapproved as an invalid application. Although the hospital maintains the notice of denial was never received, the hospital's file contained a note stating that the Elmore County denial notice had been received and had been forwarded to the hospital's attorney. This note corroborates the clerk's testimony regarding her conversation with the hospital's agent, in which the agent purportedly told the clerk that the Elmore County notice of denial had been received but was not in the hospital's file.

In rebuttal, the hospital points to inconsistencies in the testimony of the county clerk with respect to when the MI application was denied and as to when the denial notice was mailed. The hospital also contends that the county clerk's testimony should not be believed because she had to "reconstruct" the details surrounding the denial of the MI application. Almost two years had elapsed from the time Elmore County mailed the denial notice until the time the hospital tried to collect on the unpaid claim. Under these circumstances, it may have been understandable that the clerk was unable to remember specific details regarding the denial of the claim. In any event, the task of judging the credibility of witnesses is within the province of the trial court; on appeal, we will not substitute our opinion of a witness's credibility for that of the trier of fact. *Price v. Aztec Ltd., Inc., supra.* Consequently, the trial judge's finding that a notice of denial had been sent to the hospital by December 13, 1983—within sixty days from the date the MI application was received by Elmore County on October 17, 1983—is supported by substantial and competent evidence. It will not be disturbed on appeal.

We next turn to the trial judge's conclusion of law that the hospital's claim for payment of Cassell's expenses was barred by Elmore County's timely denial of the MI application. This is a question upon which we will exercise free review. We have held that mailing a denial notice within the sixty-day limit prescribed under I.C. § 31–3505 precludes the applicant from claiming that the application is deemed approved. *University of Utah Hospital v. Twin Falls Co., supra.* Based upon the findings of fact, the trial judge's decision properly reflected this principle. We therefore hold that the district court correctly denied relief to the hospital.

We have considered the hospital's other arguments and need not address them in this appeal. The district court's judgment is affirmed. Costs to respondents. No attorney fees are awarded.

BURNETT and SWANSTROM, JJ., concur.