786 P.2d 600

**IHC HOSPITALS, INC., a nonprofit Utah corporation doing business as Primary Children's Medical Center, Respondent–Cross Appellant,**

and

**Eastern Idaho Regional Medical Center, an Idaho corporation, Respondent,**

v.

**BOARD OF COMMISSIONERS OF BONNEVILLE COUNTY, Idaho, Respondent–Cross Respondent,**

and

**Board of Commissioners of Bingham County, Idaho, Appellant–Cross Respondent.**

No. 17585.

Court of Appeals of Idaho.

Feb. 2, 1990.

Colin W. Luke, Blackfoot, for appellant Bd. of Com'rs of Bingham County.

Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for respondent IHC Hospitals, Inc. Larry Lee Goins, argued.

Jack H. Robison, Pocatello, for Eastern Idaho Regional Medical Center, respondent.

Anderson, Pike & Bush, Idaho Falls, for respondent Bd. of Com'rs of Bonneville County. Blake G. Hall, argued.

SWANSTROM, Judge.

Intermountain Health Care Hospitals, Inc. (IHC) and the Eastern Idaho Regional Medical Center (EIRMC) provided emergency medical treatment to a medically indigent patient. The hospitals filed claims with Bonneville and Bingham counties, seeking reimbursement for the cost of the services from the county responsible for payment under I.C. § 31-3506. The commissioners of both counties denied responsibility. The hospitals appealed the commissioners' decisions to the district court in each county. The district court consolidated the appeals and ultimately decided that Bingham County was the responsible county. Bingham County now appeals, contending the district court erred in determining the "residence" of the indigent patient was Bingham County, as the term is used in I.C. § 31-3506. IHC cross-appeals, contending the district court erred in failing to award attorney fees and some of its litigation costs. We affirm for reasons we explain below.

On September 7, 1986, a child was born two months premature to Angela Resendiz at EIRMC in Idaho Falls. The next day the child, Brenda Resendiz, was transferred to IHC in Salt Lake City, Utah. Brenda was returned to EIRMC on November 4, 1986, and continued to receive treatment there until December 16, 1986. The Resendiz family incurred unadjusted medical bills of $2,909.25 and $17,675.80 at EIRMC and $89,469 at IHC. The father, Francisco Resendiz, was a farm worker. The hospitals determined that the Resendizes were medically indigent as defined by I.C. § 31-3502. The hospitals believed that either Bingham County or Bonneville County was responsible because the Resendizes had recently lived in both counties. However, the hospitals were unsure which county would bear responsibility for payment, so claims were filed with both counties.

■ Thus, the key issue in this case became the determination of residency. With respect to this issue, the district court recited the pertinent facts as follows:

Angela Resendiz came to Idaho in 1977 from Montana and her husband Francisco came from Mexico in 1981. Both lived in Idaho Falls before they met. They were married on February 13, 1986, and at that time moved into an apartment in Idaho Falls, Bonneville County, Idaho. Mr. and Mrs. Resendiz obtained a post office box in Idaho Falls so Francisco could document his status in this country and receive his green card from the federal government.

In April, 1986, Francisco obtained employment with a Shelley farmer in Bingham County, Idaho. The Resendiz family moved into a house in Bingham County provided by the employer and planned to remain there through the harvest season. After harvest the family planned to return to live and seek other employment in Idaho Falls or wherever available. Most of their family lived in Bonneville County, however, Angela's sister lived in Pingree, Bingham County, Idaho. All shopping was done in Idaho Falls and their motor vehicle was registered in Bonneville County.

On September 7, 1986 Mrs. Angela Resendiz gave birth to Brenda at EIRMC [in Bonneville County], and the medical expenses which are the subject of these appeals were incurred.

In November, 1986, the harvest was completed and Angela returned to Idaho Falls to live with her sister while Francisco returned to Mexico as a condition of immigration. In December 1986, Francisco returned to Idaho and found employment with King B Jerky in Idaho Falls. In January, 1987, the family moved into an apartment in Idaho Falls.

At the time of the hearings before the respective county commissioners, Francisco and Angela both worked at Farmer's Produce located on the Lewisville Highway in Bonneville County. Angela concluded her testimony by stating that they always considered Idaho Falls to be their home.

Based upon the foregoing facts, the Bonneville County Commissioners found Francisco, Angela and Brenda Resendiz to be residents of Bingham County at the time Brenda was born on September 7, 1986.

The district court, in its appellate capacity, determined that Bingham County was the responsible county because of the Resendizes' residence.

Our analysis of the issue begins with the language of the controlling statute, I.C. § 31-3506 (1983). Originally, the statute was enacted in 1974 as part of a new chapter of the code dealing with payment for hospitalization of medically indigent persons. *See* 1974 Idaho Sess.Laws, ch. 302, § 12, pp. 1775–81. The statute was amended in 1976. This amended version remained in effect during the pertinent times in this case, in 1986 and 1987. The statute reads as follows:

31-3506. DETERMINATION OF OBLIGATED COUNTY. Payment for hospitalization of a medically indigent individual shall be provided by the county in which such individual maintained a residence immediately preceding hospitalization or institutionalization. If such individual has not resided in any county of Idaho for a period of six (6) months within the five (5) years preceding hospitalization, then the county where the individual maintains a residence immediately preceding hospitalization shall be the obligated county. A husband's place of residence shall be deemed the place of residence of his wife and children, unless the husband's residence is out of state, in which case the place of residence of the wife in Idaho shall control. If a man maintains a family residence in one (1) county and maintains another residence in a different county for purposes of employment, the county where the family residence is maintained shall be deemed the man's place of residence.

1976 Idaho Sess.Laws, ch. 121, § 9, p. 468. This statute has become widely known as the source of much uncertainty, confusion and litigation over its meaning. A progression of cases has dealt with its application to varying factual circumstances. *See,* e.g., *Intermountain Health Care, Inc. v. Board of Commissioners of Blaine County,* 109 Idaho 412, 707 P.2d 1051 (1985); *Intermountain Health Care, Inc. v. Board of County Commissioners of Madison County,* 109 Idaho 685, 710 P.2d 595 (1985); *East Shoshone Hospital District v. Nonini,* 109 Idaho 937, 712 P.2d 638 (1985); and *University of Utah Hospital v. Elmore County,* 115 Idaho 132, 765 P.2d 157 (Ct.App.1988). In 1988, the Legislature finally recognized the serious problems flowing from I.C. § 31-3506 and made attempts to improve and clarify the residency requirements. *See* 1988 Idaho Sess.Laws, ch. 332, pp. 994–96 and 1989 Idaho Sess.Laws, ch. 193, pp. 475–78 and ch. 374, pp. 942–44. These recent amendments are interesting but are not particularly helpful in construing the meaning of the former statute.

We believe that three cases of our Supreme Court, determining residency under the former statute, are controlling here. We turn first to *Intermountain Health Care, Inc. v. Board of County Commissioners of Madison County, supra.* That case was factually similar to the case now before us. There, a young married couple moved from Canyon County to Madison County in November 1980 for an employment opportunity. Prior to their move the couple had resided in Canyon County since birth. Three months after moving to Madison County a child was born premature and with severe medical problems. The parents were indigent. Madison County refused the hospital's claim for payment, relying on its interpretation of I.C. § 31-3506. When the case reached the Supreme Court, the Justices tried to make sense of the statute as amended in 1976. They concluded that the first sentence of the statute controlled. The Court said:

A medically indigent person's residence at the time of hospitalization, which in this case was Madison County where this claim was filed, should be used to determine the county liable for payment of that person's hospitalization costs.

109 Idaho at 687, 710 P.2d at 597.

We think it is important to note here that the Court in *Madison County* had no need

to discuss in detail the meaning of "residence." No one questioned that Madison County, at the time of the medical emergency, was where the couple maintained their residence. The question in *Madison County* was whether the second sentence of I.C. § 31–3506 placed the responsibility for payment upon Canyon County because that was the only county where the couple had resided for six months or longer in the five years preceding hospitalization. The Court held that the second sentence had no application to the facts in that case.

Applying *Madison County* to the case now before us, we must decide whether the facts show that the Resendizes "maintained a residence [in Bingham County] immediately preceding hospitalization." If the answer is "yes," our inquiry is ended. Under *Madison County* it is immaterial whether the Resendizes resided in Bingham County for less than six months. It is also immaterial whether they had maintained their residence in Bonneville County for more than six months immediately prior to moving to Bingham County. However, if we can say that the facts show as a matter of law that the Resendizes' "residence"— as used in § 31–3506—was *not* in Bingham County, then we must determine whether their "residence" remained in Bonneville County up until the time of the hospitalization.

The question of what is meant by "residency" or "residence" in context of the medical indigency statutes was addressed twice by our Supreme Court in the other two cases that control our decision here. The first of these cases was *Cartwright v. Gem County*, 108 Idaho 160, 697 P.2d 1174 (1985). The Court was asked to determine the meaning of "reside" as used in § 31–3404 dealing with applications to counties for payment of *non*-emergency medical services for indigent persons. The Court said:

> Residency, as used in the statute, requires physical presence coupled with an intent to remain, or an absence of intent to move elsewhere. *Arakaki v. Arakaki*, 54 Haw. 60, 502 P.2d 380 (1972); *Collins v. Collins*, 472 P.2d 696 (Colo. App.1970); *Accord Corr v. Westchester*

*County Dept. of Social Service*, 33 N.Y.2d 111, 350 N.Y.S.2d 401, 305 N.E.2d 483 (1973).

108 Idaho at 161–62, 697 P.2d at 1175–76. The patients involved in that case had been living in a care center in Gem County for more than a year when applications were submitted to Gem County for payment of anticipated medical services. Each patient had been admitted to the care center from out-of-county hospitals. The Court concluded that because the two patients were physically present in Gem County, and had no intent to move from Gem County, they were residents.

The other case dealt directly with § 31–3506. *Intermountain Health Care, Inc. v. Board of Commissioners of Blaine County*, 109 Idaho 412, 707 P.2d 1051 (1985) (*Blaine County*), was decided two months before *Madison County*. The *Blaine County* case, unlike the present case, involved only one county which had denied payment for hospital services furnished to a child born prematurely in Blaine County to illegal aliens living in Blaine County. There, the county argued that an illegal alien could not be a "resident" of Idaho. The county also contended that because the child's residence was determined by the father's residence, the child could not be a "resident" of Idaho. The district court agreed, but the Idaho Supreme Court reversed.

The Court first dealt with the argument that the Legislature must have intended to limit the meaning of "resident" to those persons *lawfully* residing in the state. The Court met this argument with the following discussion of the meaning of the term:

> "Residence" is defined as "personal presence at some place of abode ... and is made up of fact and intention, the fact of abode and intention of remaining...." Black's Law Dictionary 1176 (rev. 5th ed. 1979). It is "the place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; the house where one's home is; a dwelling house." *Perez v. Health and*

*Social Services,* 91 N.M. 334, 573 P.2d 689, 692 (1977).

The medical indigency statutes do not define the words "residence," or "resident," though this Court held in *Cartwright v. Gem County,* 108 Idaho 160, 697 P.2d 1174 (1985) that as used in I.C. § 31–3404, governing application for non-emergency aid to medical indigents, residency "requires physical presence coupled with an intent to remain, or an absence of intent to move elsewhere." 108 Idaho at 161, 697 P.2d at 1175. It has been uniformly held, however, that words denote their ordinary meaning unless a different intent is clearly indicated. Specifically, the word "resident" or the word "residence" as used in a statute pertaining to liability for payment for medical assistance should be given its ordinary and common meaning. *Perez,* 573 P.2d at 691. There is no indication in our statutes that the legislature meant to do otherwise. Further, the words "residence" and "resident" as used in statutes do not have a uniform meaning. "They are to be construed in the light of the context, with consideration of the purpose of the statutory enactment." (Emphasis omitted.) *Catalanotto v. Palazzolo,* 259 N.Y.S.2d 473, 476, 46 Misc.2d 381 (N.Y.1965). Therefore, the meaning of "resident" in statutes dealing with other matters, such as fishing licenses and college tuition, are not relevant here absent specific evidence of a legislative intent to give them similar meaning.

109 Idaho at 414, 707 P.2d at 1053.

Bonneville County now contends that the Supreme Court in *Blaine County* broadened the definition of "residence" used in § 31–3506 from the definition the Court used for § 31–3404 just six months earlier in *Cartwright.* Bonneville County has argued that since *Blaine County* was decided, the subjective element of "an intent to remain, or the absence of an intent to move elsewhere" no longer plays a part in determining where a person "resides" or "maintains a residence" for the purpose of § 31–3506, at least.

Bonneville County did not take this position until after the hospital appealed. Following its own administrative hearing, the Board of Commissioners issued its findings of fact, conclusions of law and order. The Board concluded that "[r]esidency requires physical presence coupled with an intent to remain. See *Cartwright v. Gem County,* . . . ." Nevertheless, the Board made findings about the Resendizes' intent which enabled the Board to conclude that Bingham County was "the obligated county" because it was "the county of residency immediately prior to hospitalization."

On appeal to the district court, however, Bonneville County sided with the arguments made by IHC—that the Supreme Court had adopted one definition of residence under I.C. § 31–3404 for non-emergency cases, in *Cartwright,* and a different definition under I.C. § 31–3506 for emergency cases, in *Blaine County.*

Of course, Bingham County has always contended that the Resendizes were in Bingham County for a temporary purpose—seasonal employment—and intended to return to Bonneville County when the job ended. Bingham County argued that the Supreme Court in *Blaine County* did not adopt a definition of residence different from the definition used in *Cartwright.* The county contends that "residence" as defined in *Cartwright,* with its subjective element of intent to remain, is equivalent to "domicile." A residence is not given up when one leaves it for a temporary purpose, intending to return when the purpose has been accomplished. Accordingly, Bingham County contends the Resendizes' residence remained in Bonneville County although the Resendizes were temporarily living in Bingham County when the need for emergency medical services arose.

We believe, however, that the Supreme Court in *Blaine County* did determine that "residence" as used in the medical indigency statutes is broader than "domicile." The Court determined that "words denote their ordinary meaning unless a different intent is clearly indicated." 109 Idaho at 414, 707 P.2d at 1053. Thus, the Court said "[residence] is 'the place where one actual-

ly lives or has his home; a person's dwelling place or place of habitation; and abode; the house where one's home is; a dwelling house.'" *Citing Perez v. Health and Social Services,* 91 N.M. 334, 573 P.2d 689, 692 (1977); *cert. denied* 91 N.M. 491, 576 P.2d 297 (1978). The Court did not include subjective intent in this "ordinary meaning."[1]

Immediately prior to Angela's hospitalization in EIRMC in Bonneville County, the Resendiz family lived in a dwelling house located in Bingham County. It is undisputed that they had been living there several months when Angela prematurely went into labor. Even if it was the parents' intention to return to Bonneville County after Francisco's employment ended in Bingham County, they were "residents" of Bingham County within the statutory interpretation provided by *Blaine County.* Accordingly, we hold that the district court did not err in concluding that Bingham County was the obligated county.

We now turn to other issues. Bingham County has argued that it was wrongfully excluded from participating in the Bonneville County hearing before the county commissioners. It is also asserted that the district court wrongfully consolidated the records of each county's hearing, rather than deciding the appeals separately based solely on the respective records in each proceeding. Bingham County contends that had the district court proceeded correctly, the court would necessarily have had to uphold the findings of the Bingham County Commissioners concerning residency. We do not need to decide, however, whether these alleged procedural errors have merit. If error occurred, it was harmless. Even if all of the facts found by the Bingham County Commissioners were taken as true, we nevertheless would hold as a matter of law that the Resendizes were "residents" of Bingham County when emergency medical services were provided.

 Finally, we address the cross-appeal by IHC. The hospital contends that the district court erred in refusing to award it attorney fees incurred in the administrative hearings, as well as in the district court. Moreover, the hospital argues, the two counties acted unreasonably in not agreeing to compensate the hospital before litigating—between themselves—the question of which county was ultimately responsible. The argument suggests that both counties ought to be held liable for IHC's fees and costs under I.C. § 12–117 or for its fees under I.C. § 12–121.

We have considered each of IHC's arguments. An award of fees under I.C. § 12–117 can be made only if the court finds in favor of a party and also finds that a "state agency" acted without a reasonable basis in fact or law in any administrative or civil judicial proceeding where the agency and the party are adversaries. Here, we hold the statute to be inapplicable because a county is not a "state agency" within the meaning of the statute. *See* I.C. §§ 12–117(4)(b) and 67–5201(1). Moreover, we think the issues raised by Bingham County in the district court were not frivolous, unreasonable or without foundation as required for an award of fees under I.C. § 12–121. We conclude that the district court's order regarding costs and attorney fees was correct.

Accordingly, we affirm that order and the judgment determining responsibility for the medical expenses. Costs in this

---

1. We cannot say with certainty that all of the concurring Justices in *Blaine County* agreed that "residency," even for the purposes of I.C. § 31–3506, contains no element of intent. We believe there was agreement, however, that any intent element must be consistent with the basic common-law concept of residency. A definition of intent which would equate "residency" with "domicile" would not be acceptable. The distinction was noted by our Supreme Court in *Reubelmann v. Reubelmann,* 38 Idaho 159, 164, 220 P. 404, 409 (1923):

The essential distinction between residence and domicil is that the first involves the intent to leave when the purpose for which one has taken up his abode ceases. The other has no such intent; the abiding is *animus manendi.* One may seek a place for the purposes of pleasure, of business or of health. If his intent be to remain, it becomes his domicil; if his intent be to leave as soon as his purpose is accomplished, it is his residence.

*See also Newman v. Graham,* 82 Idaho 90, 349 P.2d 716 (1960).

appeal to the respondents. No attorney fees awarded on appeal.

BURNETT, J., and HART, J., Pro Tem., concur.