Crouse Adoption Case.

Argued September 27, 1954.   Before STERN, C. J.,
STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

354

*W. P. Geary,* with him *Joseph M. Loughran* and *Robert B. Filson,* for appellants.

*D. J. Snyder, Jr.,* with him *Fred B. Trescher* and *Kunkle & Trescher,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 8, 1954:

The fate of the two children in this case has been so knotted and reknotted in legal complications that it can only be a matter of gratification to cut through the Gordian entanglements and restore the embattled infants to the people to whom they have endeared themselves and from whom they can confidently expect and will unquestionably receive the protection, care and love which would be forthcoming from natural and devoted parents.

Gloria Jean Crouse, age 8, and Dennis Paul Crouse, age 7, were born out of wedlock to Anne Crouse, a resident of Westmoreland County. In 1948, the Juvenile Court of that County, with the active aid and cooperation of the Catholic Charities, Greensburg diocese, placed Gloria Jean in the home of Michael Elroy Hixson and Kathryn Ann Hixson. Her little brother Dennis joined Gloria Jean at the Hixson home, and the maintenance for both was paid by Westmoreland County. In 1952 the Hixsons sought to adopt the children but they were unable to file in court the necessary papers because the whereabouts of the mother,

whose consent and signature to the paper were required, could not be ascertained.

On September 2, 1953, the Juvenile Court, on the oral request of the executive secretary of the Catholic Charities, without hearing, released Gloria Jean from the custody of the Hixsons and placed her under the care and custody of the Catholic Charities who delivered Gloria and her brother to the home of Robert B. Filson and Margaret DeLourde Filson, living in Armstrong County.

By this time the Hixsons had obtained the consent of the children's mother for adoption and accordingly filed on September 2, 1953, a petition for such adoption in the Westmoreland County Orphans' Court, which petition was contested by the Catholic Charities through legal counsel who appeared at the hearing. On October 22, 1953, the Orphans' Court entered a decree granting the petition of the Hixsons. From this decree the Catholic Charities appealed, but the appeal was later withdrawn.

On November 13, 1953, the Filsons attacked the adoption proceedings complaining that they had not been notified of the court's action, and asserted further that their home offered ideal facilities for the welfare and best interests of the children. The Orphans' Court rejected the Filson's attempted intervention, stating that they were not proper parties in interest and that the allegations in their petition did not set forth any ground for setting aside the decreed adoption. On the same day that the Filsons challenged the Hixson adoption proceedings the Hixsons presented a petition for a writ of habeas corpus to obtain custody of the children from the Filsons who still held on to them. With the issuance of the writ the court awarded custody to the Hixsons. The Filsons ignored the custody order and the Hixsons appealed to the court which

in turn directed the issuance of a citation against the Filsons to show cause why they should not forthwith surrender Gloria Jean and Dennis to the Hixsons.

The Filsons contested the jurisdiction of the court to issue the writ and filed a motion to dismiss the rule for citation. On December 18, 1953, the Orphans' Court of Westmoreland County refused the motion to dismiss, and ordered Robert B. Filson to appear before the Orphans' Court to answer on a charge of contempt. The Court of Common Pleas of Armstrong County intervened fleetingly with a temporary injunction but dissolved the injunction on January 25, 1954. In March, 1954, the children were delivered to the Hixsons.

These legal peregrinations finally ended in this Court on appeals by the Filsons from the refusal to set aside the adoption decree and refusal to permit the Filsons to participate in a rehearing, and on two appeals from the order directing the Filsons to consign the children to the Hixsons.

With a persistence that does enormous credit to their sense of humanity if not to their legal perspicacity, the Filsons press several reasons why the lower court should be reversed:

1. The Filsons argue that the Juvenile Court had exclusive jurisdiction over Gloria Jean and that therefore the action taken by the Orphans' Court was without legal effect. The short answer to this argument is that the Juvenile Court on September 2, 1953, entered an order: "It is ordered and directed that the above named Gloria Jean Crouse be, and she is hereby released from the custody of . . . the Juvenile Court of Westmoreland County . . ." The Juvenile Court never did have jurisdiction over Dennis Paul.

2. The Filsons contend that the Hixsons were not qualified to adopt the children because of the Act of

1925, P. L. 127, as amended, 1 PS Sec. 4, which provides that "In no case shall any decree of adoption of a minor be made or entered unless the person proposed to be adopted shall have resided with the petitioner for a period of six months prior thereto." The appellants maintain that this six months period must *immediately* precede the date of adoption. This is a fallacious assumption. The purpose of the six months provision is to assure a friendly and understanding relationship between the prospective adopting parents and the adoptive child. Naturally it is more desirable that the sharing of the same roof take place as close as possible in point of time to the beginning of the adoption proceedings, but circumstances may prevent this chronological proximity. The Act recognizes this possibility and specifically states that a petition for adoption may be filed in the county where the petitioner is a resident *or* in the county in which the child is a resident. In construing this feature of the Act, the Superior Court said in the *Russell Adoption Case,* 170 Pa. Superior Court 358: "The law is not to be construed unreasonably and thus defeat the express purposes of the Act . . .

"The word 'resided' in the statute must receive a broad construction . . ." If the legislature had intended that the six months period had to immediately precede the adoption decree it would have said so.

3. The Filsons argue that the six months' residence requirement is to establish a bona fide intention of adoption and that since the Hixsons had received maintenance money from the county for the two children, this fact negates any assumption of sincere adoptive intent. But payment or nonpayment for board and lodging cannot be the criterion for the existence of that sentiment and attachment which must inevitably accompany the application for adoption. The fact

that the Hixsons are now taking the children without subsidy or assistance from the county and with the realization that as the children grow older they will become an ever-heavier burden on the family budget completely destroys any contention that their attachment was in any way built on the meager maintenance pay received from the county.

4. The fact that the Filsons did not receive notice of the adoption proceedings in no way derogates from the regularity of the adoption proceedings. The custody of the children had been placed by order of the Juvenile Court in the Catholic Charities. Notice, therefore, to the Catholic Charities was sufficient.

5. Since the children had not been abandoned by their mother, it was not necessary to obtain, in addition to the mother's consent, the approval of any other person or institution in order for the Orphans' Court to award the children to the Hixsons. The mother voluntarily gave her consent to the Hixsons and to the court.

6. The Filsons contend further that the Westmoreland County Orphans' Court was without jurisdiction to issue any process against them in the habeas corpus proceedings since they were not made parties to the adoption proceedings, nor were they permitted to be heard. It is to be noted in this connection that the process was accepted by Robert B. Filson individually and as attorney for his wife. However, it is not necessary for us to decide whether this acceptance foreclosed to the Filsons the right to make a special appearance d.b.e. to contest the jurisdiction of the court for, as stated in *Smith v. Smith*, 15 Pa. Superior Ct. 366: "Although the wife appeared specially, it has been held many times that such a qualified appearance is of avail only when the writ or service is defective, and in the absence of such defect such a provisional ap-

pearance becomes a general one: Bolard v. Mason, 66 Pa. 138; Everett v. Niagara Insurance Co., 142 Pa. 322; 1 Pepper & Lewis's Digest of Decisions, 1158." In addition, the Orphans' Court Act of August 10, 1951, P. L. 1163, Art. VII, Sec. 703, 20 PS §2080.703, provides: "In any proceeding for the adoption of a minor or for the appointment of a guardian of his person, the court may award a writ of habeas corpus."

Sec. 704: "Jurisdiction of the person shall be obtained by citation to be awarded by the court upon application of any party in interest . . ."

Sec. 705: "A citation to obtain jurisdiction of a person may be served by any adult person, or by the sheriff of the county wherein the citation issued, or by deputization of the sheriff of the county where the service may be had in any county of the Commonwealth, in the same manner as a writ of summons in an action of assumpsit in the court of common pleas . . ."

It is abundantly clear that the summons was properly served against the Filsons in Armstrong County as the Act recognizes services beyond the boundaries of the issuing county. Nor can it be successfully argued that process can issue only against a party to the action, for if this were true it would be a simple matter to circumvent the court's jurisdiction by merely transferring the involved child to a third person.

We see no legal merit in any of the arguments advanced by the Filsons in the appeals before us. Laudable as are the efforts of these good people to assume the responsibilities, obligations and burdens which must go with the raising of two children, yet in all fairness it must be said that the children were in the Filson house only for a few weeks prior to the presentation of the adoption petition in September, 1953. The Hixsons, on the other hand, had the children in their

care since April, 1948, when Gloria Jean was only two years of age and Dennis Paul was but a tot of eight months. In caring for Gloria Jean and Dennis Paul from infancy the Hixsons have built a temple of proved devotion in which the children can be assured of all the love, protection, education and care which are their due.

The decree is affirmed. Costs on the appellants.