844 P.2d 844

**In the Matter of the Adoption Petition of Ted C. AWTREY and Wanda C. Awtrey.**

**No. 13613.**

Court of Appeals of New Mexico.

Oct. 22, 1992.

Certiorari Denied Dec. 9, 1992.

Asa Kelly, Jr., Silver City, for petitioners-appellants.

Richard A. Griscom, Gen. Counsel, Judith A. Ferrell, Asst. Gen. Counsel, New Mexico Human Services Dept., Santa Fe, for respondent-appellee.

*OPINION*

BLACK, Judge.

Ted and Wanda Awtrey (Petitioners) appeal the trial court's order dismissing their adoption petition for lack of jurisdiction. The issue here is whether Petitioners come within the placement exception of NMSA 1978, Section 40–7–34(A)(3) (Repl.Pamp.1989). We hold that they do, and reverse the trial court's order of dismissal.

Three children are the subject of these proceedings. In April 1987, the older two children were left by their mother with her brother and his wife, Petitioners. Petitioners contacted the Human Services Department (the Department), which investigated and initiated proceedings to declare the children neglected. An ex parte order was entered giving the Department physical and legal custody of the children. The Department treated the children's living arrangement with Petitioners as a relative foster placement. In January 1988, shortly after his birth, the third child was placed with Petitioners. Later that month, a stipulated dispositional order was entered, finding the children neglected, leaving custody in the Department, and officially placing the children in Petitioners' home for foster care.

In May 1989, Petitioners filed a petition seeking adoption of the three children. At first it appeared that the children were doing well with Petitioners, and the Department was generally supportive of their adoption plans. In February 1991, however, the Department was notified by school officials of concerns about the children. After a home visit, and discussion with Petitioners, the children were removed from Petitioners' care and placed in another foster home.

The Department moved to dismiss the petition for adoption on the basis that the Department was the legal custodian with the exclusive right to determine placement of the children and the Department had not placed the children in Petitioners' home for purposes of adoption. Petitioners responded that they were within Section 40–7–34(A)(3), an exception to the adoption placement requirement. The district court determined that the children had been in Petitioners' home under a foster placement and therefore, concluded the children were not "residing" with the Petitioners within the meaning of Section 40–7–34(A)(3). The district court therefore held Petitioners did not satisfy the "relative exception" and dismissed the adoption petition for lack of jurisdiction.

Section 40–7–34 reads in pertinent part as follows:

40–7–34. Placement for adoption.

A. No petition shall be granted by the court unless the minor sought to be adopted was placed for the purpose of adoption in the home of the proposed adopting parents by the department, by the appropriate public authority of another state or by a child placement agency that is licensed by either the department or the appropriate licensing authority of the other state where the agency is located. An affidavit shall be filed with the petition setting out the facts of the placement of the child in accordance with this section. Provided, however, that the placement restrictions contained in this section shall not apply to the case of:

\* \* \* \* \* \*

(3) a child sought to be adopted by a relative within the fifth degree of consanguinity or his spouse, *if the child has resided with that relative for at least one year* prior to the filing of the petition \* \* \* \*

(Emphasis added.) Section 40–7–34 was amended in 1989; however, the amendments did not substantially change the language quoted above, which is controlling here. *See* 1989 N.M.Laws, ch. 341, § 3.

Here, the first sentence of the statute prohibits the trial court from granting a petition for adoption unless the child has been placed for purposes of the adoption in the home of the proposed adopting parents

in the manner prescribed. The third sentence then creates exceptions to the placement restrictions. Among these exceptions is the exception set out in Section 40–7–34(A)(3), which applies if the party seeking to adopt the child is a relative within the fifth degree of consanguinity and the child has "resided with that relative for at least one year prior to the filing of the petition." There is no question here that Petitioners are relatives within the fifth degree of consanguinity or that the children lived in Petitioners' home for more than a year before the petition was filed. The issue here is the meaning of the word "reside."

■ When a term is not defined by the statute, a court should interpret the word in accordance with its ordinary meaning. *Security Escrow Corp. v. State Taxation & Revenue Dep't*, 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988). We are to "read the act in its entirety and construe each part in connection with every other part to produce a harmonious whole." *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). The ordinary meaning of the word "reside" connotes dwelling permanently or continuously; having a settled abode for a time; having one's residence or domicile. *Webster's Third New International Dictionary* 1931 (1966); *see also Perez v. Health & Social Servs.*, 91 N.M. 334, 337, 573 P.2d 689, 692 (Ct.App.1977), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978).

The Department argues that implicit in the definition of the word "reside" is an intent to remain permanently. Therefore, it argues, the children must have intended to remain permanently with Petitioners before a court can find they resided with Petitioners. However, the argument continues, we are concerned here with minors who cannot possess the requisite intent to determine residence or domicile. *See Montoya v. Collier*, 85 N.M. 356, 358, 512 P.2d 684, 686 (1973). Thus, the Department reasons, the residence of these children, who are in its legal custody, is with the Department, not Petitioners or other foster homes. Moreover, the Department concludes that, since foster homes are temporary by definition, the required permanency is lacking.

We are unpersuaded by the Department's argument. The issue here is not who has legal custody of the children and thus the legal right to determine where they live, but whether the children have "resided" with a relative for at least a year. In this context it is the fact that the children had a "settled abode for a time" (i.e., one year), and not their intent, which is critical. We do not believe, therefore, that the intent of the Department as legal custodian of the children is dispositive of whether or not the children reside with someone. *Cf. In re Adoption of Crouse*, 379 Pa. 353, 108 A.2d 763, 765 (1954) (holding that, despite the original placement with "foster parents" and state provision of "maintenance money," adoptees had legally "resided" with those parents for six months prior to the adoption).

■ We find nothing in the Department's original treatment of Petitioners as a relative foster home which is inconsistent with the children acquiring residence with Petitioners. The language of Section 40–7–34 indicates the legislature was especially sensitive to family relationships when it fashioned the exceptions to the requirement of departmental placement. The majority of these exceptions recognize living arrangements where the family of the adoptee is involved in the placement. *See* § 40–7–34(A)(1)–(4). The children were originally "placed" with Petitioners by their mother, Ted Awtrey's sister. At this point, the children's residency was presumably with Petitioners. *See In re Duren*, 355 Mo. 1222, 200 S.W.2d 343 (1947) (en banc). We find nothing in the district court's ex parte order giving physical and legal custody of the children to the Department, or in the Department's subsequent sanction of the children's living at Petitioners' as a "foster placement," which would legally alter their residence. In reaching this conclusion, we are guided by this court's discussion of legislative policy relating to the custody of children in *In re Adoption of Doe:*

The 1979 enactment of § 40–7–4(B)(4), *supra,* reflects a legislative change from the primacy of parental rights in favor of also giving consideration to the physical, mental and emotional welfare and needs of the child where a parent has left a child in the physical custody of foster parents for an extended period, and where the child has come to look upon his foster parents for all of the love, affection, instruction, and physical needs that the natural parents have failed to provide.

98 N.M. 340, 344, 648 P.2d 798, 802 (Ct. App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982).

All that is required under Section 40–7–34(A)(3) with regard to the adoptee's living arrangement is that the adoptee have "resided" with the petitioner seeking adoption for at least one year prior to filing the petition. The purpose of such a requirement is "to assure a friendly and understanding relationship between the prospective adopting parents and the adoptive child." *In re Adoption of Crouse,* 108 A.2d at 765 (discussing Pennsylvania's requirement that adoptee reside with petitioner six months). This can certainly occur whether the children, as here, were originally deposited by their mother or placed in the home for the specific purpose of adoption by the Department.

We also reject the Department's argument that interpreting "reside" to mean "living with continuously" in any way conflicts with the New Mexico Children's Code or similar federal statutes which require the Department to make an effort to reunify families before proceeding with termination of parental rights and adoption. We do not see how giving "reside" its ordinary and usual meaning interferes with Department attempts at family "reunification." In this case the Department had entered a stipulated order with the children's mother agreeing that the children were neglected and placing the custody of the children in the Department more than a year before the adoption was filed.

Nor does our finding in any way encourage the placement of children with parties unfit to be adoptive parents. Although Section 40–7–34 does not mandate a Department home study in this situation, NMSA 1978, Section 40–7–46(C) (Repl.Pamp.1989), recognizes the authority of the court to direct such a home study. And nothing in our present decision precludes the Department from introducing the evidence which originally caused it to remove the children from Petitioners' foster home. Moreover, Petitioners are still required to present and prove each allegation of the adoption petition by clear and convincing evidence. NMSA 1978, § 40–7–49(B) (Repl.Pamp.1989). After Petitioners present such evidence, the court must find Petitioners are suitable adoptive parents and that the best interests of the adoptees will be served by the adoption. NMSA 1978, § 40–7–51(A)(7) (Repl.Pamp.1989).

We find that the children who are the subject of this adoption petition resided with Petitioners for a year prior to the filing of the petition within the meaning of Section 40–7–34(A)(3). The fact that the children were in the home under a foster placement does not prevent a finding that they were "residing" with Petitioners.

The order of dismissal is reversed and the matter remanded to the district court for further proceedings.

IT IS SO ORDERED.

BIVINS and CHAVEZ, JJ., concur.